**SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff-Appellee,**

v.

**UNITED FINANCIAL GROUP, INC., for-
merly known as USI Group, Inc., et al.,
Defendants-Appellants.**

No. 72–1384.

United States Court of Appeals,
Ninth Circuit.

Jan. 17, 1973.

Garry P. McMurry (argued), Patric J. Doherty, of McMurry, Sherry & Nichols, Portland, Or., Roger V. Holm, Richard Bartlett, of Bartlett & Holm, Portland, Or., David L. Cunningham, R. J. Wolf, of Cunningham, Wolf & Churchill, San Francisco, Cal., for defendants-appellants.

David Ferber, Sol. (argued), Gerald Boltz, Michael A. Macchiaroli, Harvey L. Pitt, Special Counsel, Jack Redden, G. Bradford Cook, General Counsel, Securities & Exchange Commission, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for plaintiff-appellee.

Before CHAMBERS, MERRILL and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

This case is before us on an interlocutory appeal authorized by 28 U.S.C. § 1292(a)(1) and (2). United Financial Group, Inc. (hereinafter "UFG"), et al. appeal from the ruling of the district court in favor of the Securities and Exchange Commission (hereinafter "SEC") granting a preliminary injunction and appointing a receiver *pendente lite.* Our opinion is limited to the issues of whether there is subject matter jurisdiction and whether the district judge abused his discretion in granting the relief mentioned.[1] We affirm.

UFG is a Delaware corporation with its headquarters in Novato, California. The individual appellants are officers and directors of UFG and of various of the appellant companies owned by UFG. UFG is a holding company owning and, from its home base in the United States, controlling quite a large number of service and investment companies incorporated in foreign countries. Such investment companies are commonly referred to as "offshore mutual funds." Most of such funds, including the ones here,

---

1. Appellants also contend that the SEC has consistently led the offshore fund community to believe that it did not seek to regulate offshore funds and that, if the SEC now wishes to change its position, regulation of the industry as a whole is the necessary approach rather than "piecemeal litigation." However, since such an argument does not go to the legal merits of the jurisdictional question, we find it unnecessary to reach that issue.

have very substantial investments in companies and property in the United States. Many offshore mutual funds were created subsequent to the passage of the Foreign Investors Tax Act of 1966, 80 Stat. 1541, which made certain tax advantages available to foreign investors and to the companies in which they invested so long as such companies were not engaged in a domestic business.

Although appellants insist that all offers and sales of shares in the mutual funds of the various investment companies were confined to foreigners, there is evidence in the record to the contrary. A 1969 UFG-complex shareholder list disclosed a number of shareholders with addresses in the United States. Appellants advertised in overseas editions of American newsweeklies, which are read widely by Americans residing and traveling abroad. An American serviceman swore that, in response to such an advertisement, he was sold mutual fund shares of one of the appellant companies. A doctor employed by the Veterans Administration who was temporarily living in the Philippines was sold shares after having been informed that such a sale to American citizens temporarily living abroad was not illegal. An American citizen employed overseas by one of the appellant companies swore that she was sold shares in the company and that no purchase restrictions with regard to citizenship were brought to her attention. There is also clear evidence that an offer to exchange shares of one of the appellant companies for shares of another of the appellant companies or for interest in land owned by a third appellant company was made to an Ameri-

can citizen, addressed to him at his residence in the United States.

■ In short, there are American owners of the shares of some of the appellant companies, and there have been offers and sales of stock to American citizens. Coupled with the other evidence before the district court that the complex of foreign companies was in fact directed and controlled as an integrated whole from the United States, that appellants obtained money from investors by means of untrue statements and omissions of material facts, and that the mails and other facilities of interstate commerce of the United States were used in preparation and distribution of prospectuses, to set up sales meetings and to consummate investment transactions, there was sufficient evidence for subject matter jurisdiction under § 22(a) of the Securities Act of 1933 and § 27 of the Securities Exchange Act of 1934.[2] Compare Schoenbaum v. Firstbrook, 405 F.2d 200, 206 (2d Cir. 1968), rev'd on other grounds, 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied sub nom. Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L. Ed.2d 219 (1969); SEC v. Gulf Intercontinental Finance Corp., 223 F.Supp. 987, 994–996 (S.D.Fla.1963).

■ Although there was a showing of only a few instances involving American investors relative to the total sales volume, jurisdiction may not be resolved by a mere tallying of domiciles of shareholders.[3] The relative number of American citizen shareholders vis-a-vis alien shareholders is not determinative of whether United States courts may assert jurisdiction. In this case, focus

---

2. Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, provide generally that district courts of the United States shall have jurisdiction of violations of the securities laws and the SEC rules promulgated thereunder. The SEC charged UFG with violations of Sections 5(a) and (c) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (c) and 77q(a);

of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and of Rule 10b–5, 17 C.F.R. § 240.10b–5.

3. For example, in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a Texas life insurance company had only one policyholder in California and yet assertion of personal jurisdiction by California was held not to violate due process.

should be upon appellants' activities within the United States and the impact of those activities upon American investors. Here, there was a showing of very substantial activities by appellants within the United States and a showing that, as a result of those activities, at least three American investors now hold nearly $10,000 worth of stock for which there appears to be no market and which appellants have declined to redeem although requested to do so. Since the securities laws have always been construed very broadly to promote the remedial purposes behind them,[4] we find unpersuasive the argument that jurisdiction should be declined because only a very few instances of sales to American citizens have been shown, especially given the practical difficulties present in this case.[5] "That the jurisdictional hook need not be large to fish for securities law violations is well established." Lawrence v. SEC, 398 F.2d 276, 278 (1st Cir. 1968).

An alternate theory of jurisdiction advanced by respondent is based solely upon appellants' use of the facilities of interstate commerce. If accepted without qualification, there would be jurisdiction in every case regardless of whether American investors were involved. Such a theory is squarely at odds with appellants' argument of improper extraterritorial application of legislation. Although the "interstate commerce facilities use" theory[6] may have some merit, it is unnecessary to our decision in this case and we, therefore, express no opinion as to its soundness.[7]

■ Appellants argue that § 30(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78dd(b), protects them from application of that Act. The section provides:

The provisions of this chapter or of any rule or regulation thereunder shall not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States, unless he transacts such business in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to prevent the evasion of this chapter.

Since the Commission has not exercised its rule-making power under this section, the argument runs, the appellants' activities are exempt from regulation. The difficulty with such a position is that it overlooks the key phrase of "without the *jurisdiction* of the United States." (Emphasis added.) Appellants' argument has apparently construed "jurisdiction" to mean "territorial limits." It is clear from prior decisions,[8] and we so hold, that it has no

---

4. SEC v. Capital Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–351, 64 S.Ct. 120, 88 L.Ed. 88 (1943); Prudential Ins. Co. of America v. SEC, 326 F.2d 383, 386 (3d Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1629, 12 L.Ed.2d 497 (1964).

5. As of the day this case was heard, appellants had not yet complied with a subpoena duces tecum for a current shareholder list (among other records) ordered by a federal court some time ago in the case of SEC v. USI Group, Inc., No. C–71–1511 (N.D.Cal.1971).

6. The theory is that the United States has a direct interest in the use to which the facilities of interstate commerce are put, and that, because of its plenary power over the use of the facilities of interstate commerce, Congress may outlaw any use, however incidental, which is connected with fraudulent purposes.

7. Given our ruling in this case, we also find it unnecesary to render an opinion as to the appropriateness of asserting jurisdiction on the ground of a national interest in protecting this country's reputation abroad or on the ground that the activities of the appellants have an adverse economic impact upon this country's economy.

8. Schoenbaum v. Firstbrook, 405 F.2d 200, 207–208 (2d Cir. 1968), rev'd on other grounds, 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied sub nom. Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); Roth v.

such meaning. Another difficulty with appellants' position is that they neglect to take into account the fact that offers and sales were made to United States citizens and that substantial activities were carried on by them in the United States in order to facilitate the sales of securities abroad. We therefore hold that in the circumstances of this case, § 30(b) has no application.

■ Appellants also insist that they were denied due process of law by not being allowed a full evidentiary hearing on the question of subject matter jurisdiction. The basic flaw in such an argument is that, at the time of the hearings, they did not offer to call any witnesses or to introduce any evidence on the question. Apparently content to treat the issue as purely a matter of law, appellants merely filed briefs on the question. Twice the trial judge demonstrated his concern that appellants receive due process by denying the SEC's motions for a preliminary injunction, emphasizing that the appellants should have a "fair opportunity to be heard on the issuance of a preliminary injunction."

■■ Since we have found that jurisdiction was proper, the only remaining issue is whether the judge abused his discretion in granting a preliminary injunction and in appointing a receiver. Washington Capitols Basketball Club, Inc. v. Barry, 419 F.2d 472, 475–476 (9th Cir. 1969); Jones v. Board of Regents, 397 F.2d 259 (9th Cir. 1968). "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." Bowles v. Quon, 154 F.2d 72, 73 (9th Cir. 1946). A prima facie case of the probable existence of fraud and mismanagement was demonstrated by the SEC.[9] Such a showing is sufficient to call into play the equitable powers of the court. SEC v. Keller Corp., 323 F.2d 397, 403 (7th Cir. 1963). The district court has broad powers and wide discretion to frame the

Fund of Funds, Ltd., 405 F.2d 421 (2d Cir. 1968), cert. denied, 394 U.S. 975, 89 S.Ct. 1469, 22 L.Ed.2d 754 (1969).

9. Affidavits and depositions presented by the SEC showed, among other indications, the following:

Prospective investors were never furnished with audited financial reports. Although told of the purported assets of the UFG complex, investors were never told of intra-affiliate transactions that had not been negotiated at arms-length, nor of the arbitrary valuation of the assets of UFG-affiliated companies, nor of the deteriorating financial condition of the complex and the inability of affiliates to pay off loans, nor of the foreclosure or threatened foreclosure of various assets, nor of the insolvency of various affiliated companies. United States Investment Service (USIS) investors were told that an investment of $10,000 would yield $383,000 within 20 years and that the effect of delaying investing for one year would result in a $64,000 penalty, even though there was no basis upon which such a representation could be made. United States Investment Plan (USIP) advertised a guaranteed income through USIS, but failed to disclose how this income could be guaranteed and that the guarantee was not backed by liquid investments. USIP also stated to prospective investors that money invested went into choice securities, bank deposits and California real estate when, in fact, USIP was investing public-investor funds in speculative securities without a market and in undeveloped real estate.

United Growth Fund (UGF) failed to disclose to prospective investors that the market price for its shares was nonexistent and that the price was arbitrarily fixed by the complex. UGF also failed to disclose that in some instances the value of real estate held by it had not been determined by arms-length transactions but had been arbitrarily fixed. UGF's investments, like those of USIP, were primarily in real estate or in securities of speculative companies which could not be traded. UGF's prospectus failed to disclose the problem of liquidating these assets in time of need. It held itself out as a fund which did not charge a commission and advertised that invested capital would earn profits immediately. It failed, however, to disclose that a commission was in fact paid to USIS and that almost all income UGF derived from the public's investment in it went back to UFG.

scope of appropriate equitable relief. International Manufacturing Co. v. Landon, Inc., 327 F.2d 824 (9th Cir. 1964); SEC v. Keller Corp., *supra.* Under the circumstances, we cannot say that the trial court abused its discretion.[10]

10. We note also that the district court stayed its order for 15 days in order to preserve the appellants' claims on appeal. Prior to the expiration of the 15-day stay, appellants sought and obtained from this Court an additional 10-day stay of the district court's order. On the same day this Court granted them the additional stay, appellants caused one of the corporate appellants (Standard Growth Properties, Inc.) to transfer valuable assets to a newly created corporation, which new company immediately filed a petition in bankruptcy. As a result of these facts, this Court vacated its prior stay of the district court's order.

The trial judge also may well have been impressed with the finding of a California Superior Court judge in a related lawsuit involving these appellants that they

". . . are not proceeding in good faith [in seeking to set aside a default judgment] but, on the contrary, have adopted a consistent program of evasion and confusion in the development of a very considerable series of corporations, interlocking directorates, subsidiary corporations, overlapping stock ownerships, overlapping operative and controlling officers, and confusing management programs. All of these appear to have been and have been, in fact, adopted, developed and devised for the purpose of avoiding responsibility and evading the jurisdiction of any court which might seek to hold them or any of them to their possible trust and/or contract obligations or for liabilities otherwise incurred in their business transactions." Goddard v. Pollock, No. 60567 (Cal.Super.Ct., Marin Co., Nov. 24, 1971).