**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**LINCOLN THRIFT ASSOC. et al., Defendants.**

**CONTINENTAL SERVICE CORP., Receiver-Appellee,**

v.

**Charles SCHONFELD and Helga Schonfeld, Respondent-Appellants.**

No. 76–1886.

United States Court of Appeals, Ninth Circuit.

June 8, 1977.

Howard B. Crittenden, Jr., San Francisco, Cal., argued for appellants.

Henry R. Paytas, Filler, Paytas, Shannon & Fleming, P. C. Scottsdale, Ariz., argued for appellee.

Before BROWNING and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

WALLACE, Circuit Judge:

The appellants, Charles and Helga Schonfeld, petitioned the district court to resolve

---

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

certain disputes involving a lease with Lincoln Leasing Corporation (LLC), whose property at that time was in the possession of Continental Service Corporation (the Receiver), a receiver appointed by the district court. In the alternative, the Schonfelds sought leave to sue the Receiver in an independent action. The district court denied their petition and instead granted the petition of the Receiver that the Schonfelds be enjoined from interfering in any way with the Receiver's possession of the leased premises. We reverse and remand for further proceedings.

## I.

On November 24, 1975, the Securities and Exchange Commission (SEC) filed a complaint against several corporate officers and a group of affiliated corporations, including LLC, alleging violations of sections 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. The complaint sought injunctive relief and the appointment of a receiver. In the SEC's view, the district court's authority to appoint a receiver was comprised within both its inherent power as a court of equity and the general equity power conferred upon the district courts by the Securities Act of 1933 and the Securities Exchange Act of 1934. On December 2, the district court, after a hearing, appointed the Receiver to take possession of all property of the corporate defendants. That order generally enjoined all defendants "and those persons in active concert or participation with them" from taking or interfering in any way with the corporate property in the Receiver's possession.

At the time the Receiver took possession, LLC was the lessee and sublessor of a valuable piece of Tucson, Arizona real property, the Woolco Shopping Center, which was worth approximately $4,500,000. The Schonfelds were the owners and lessors of that property, having purchased it from LLC in a December 1974 sale and lease-

back transaction. Rent for the shopping center due on December 1, 1975, was not paid. On December 12, the Schonfelds sent to LLC and the Receiver a demand for the past-due rent and notice that failure to pay within 20 days would constitute a default of the lease. On December 23, the Schonfelds sent to LLC and LLC's subtenants in the shopping center notice of two breaches of the lease expected to become effective on the first business day in January 1976, thereby putting the lease in default. These breaches were (1) nonpayment of rent within the 20-day period following notice, and (2) possession by a receiver for more than 30 days. On December 30, the Receiver sent the December rent to the Schonfelds. The Schonfelds acknowledged receipt of that rent on January 5 but noted a failure to pay a $748 late charge and demanded that amount. Apparently the Receiver sent January's rent on January 5 or 6.

On January 5, the Schonfelds determined that LLC was still in the receivership that had commenced December 2. Accordingly, on January 13, they notified the Receiver of default and termination of the lease. The sole basis for the attempted forfeiture was a provision of the lease defining as a default and breach of the lease:

> the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where possession is not restored to Lessee within 30 days.

On that same day, the Schonfelds demanded that the Receiver cancel what in essence was an $800,000 second trust deed given LLC by the Schonfelds as part of the December 1974 sale and lease-back transaction. The demand for cancellation of the security interest was made pursuant to an addendum to the lease which provided for such cancellation in the event LLC breached any terms of the lease.

Sometime before February, the Receiver tendered partial payment of the February rent to the Schonfelds' agent, the Bank of America. At the Schonfelds' direction, this

payment was not paid to their account but instead was held for the Receiver. On February 3, the bank was directed to collect no further rents on behalf of the Schonfelds for the shopping center.

On February 11, the Receiver petitioned the district court for an order to show cause why the Schonfelds should not be enjoined from declaring the lease in default, from collecting rents from the subtenants, and from otherwise interfering with the Receiver's possession and management of the shopping center. The Receiver contended both that the Schonfelds had waived any breach by accepting rent and that the district court had the inherent equitable power to refuse to enforce the forfeiture clauses of the lease. On February 13, the Schonfelds responded by filing their own petition. They sought possession of the shopping center and cancellation of LLC's $800,000 security interest or, alternatively, leave to bring an independent action (presumably in state court) to secure the same relief.

The district court held a hearing on March 8 and entered its order on March 15. In that order, the district court found that the Schonfelds had accepted the rent for December, January and February and concluded that this acceptance waived any default under the provisions of the lease concerning nonpayment of rent or possession by a receiver. Accordingly, the court enjoined the Schonfelds from declaring the lease in default or interfering with the Receiver's possession of the shopping center, including management and rent collection.

The subtenants were directed to make all rental payments to the Receiver. Implicit in the district court's order is the conclusion that the receivership proceeding, and not an independent state court action, was the appropriate forum for resolution of the dispute.

## II.

The first issue before us is whether the district court erred in refusing to permit the Schonfelds to litigate the dispute in an independent action.[1] The general rule is that this decision is within the sound discretion of the court appointing the receiver. *Compare Odell v. H. Batterman Co.*, 223 F. 292 (2d Cir. 1915) *with American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co.*, 10 F.Supp. 512 (S.D.N.Y.), *aff'd on opinion below*, 76 F.2d 1002 (2d Cir.), *cert. denied, City of New York v. Murray*, 295 U.S. 760, 55 S.Ct. 923, 79 L.Ed. 1702 (1935); *see Dunscombe v. Loftin*, 154 F.2d 963 (5th Cir.), *cert. denied*, 329 U.S. 722, 67 S.Ct. 65, 91 L.Ed. 626 (1946); *Texas ex rel. Permanent School Fund v. Campbell*, 120 F.2d 191 (5th Cir. 1941); 75 C.J.S. *Receivers* § 334, at p. 1009 (1952).

In the present case, the district court did not articulate its reasons for refusing leave to initiate an independent action and for itself reaching the merits of the dispute. Nevertheless, our review of all the circumstances surrounding the district court's decision convinces us that it did not abuse its discretion in acting as it did. First, the Schonfelds sought leave to bring an inde-

---

1. Neither of the parties contend that it was not necessary for the Schonfelds to petition the district court for leave to sue the Receiver. Thus it is unnecessary for us to discuss the issue. However, it has been held that, absent statutory authorization, a federal receiver cannot be sued without leave of the court which appointed him. *E. g., In re Hacker*, 217 F.Supp. 393, 398 (S.D.Cal.1963). *See* 7 J. Moore, Federal Practice ¶ 66.01[4], at p. 1904 (2d ed. 1972). The federal statute granting leave to sue federal receivers in some circumstances without leave of the appointing court, 28 U.S.C. § 959(a), would not help the Schonfelds here because they are seeking *possession* of property held by the Receiver. A suit for

possession clearly falls outside the scope of section 959(a). *See* 7 J. Moore, Federal Practice ¶ 66.07[2], at pp. 1937–38 (2d ed. 1975).

Also, we note an argument of the Receiver on appeal that because the Schonfelds failed to comply with a local rule of the district court they should be barred from raising the merits. The district judge was aware of the alleged failure yet did not rely on that ground. He proceeded to the merits. In this situation, we feel it inappropriate to give any greater effect to a district court's local rule than the district court itself did—especially where the Receiver has demonstrated no prejudice to itself caused by the alleged procedural dereliction. Accordingly, we also proceed to the merits.

pendent action only as an alternative form of relief. The primary form of relief requested was a favorable determination of the merits by the district court in the receivership proceedings. Second, because the matter was already before the district court, it was likely that the parties would receive a swifter, more economical resolution of the merits in the receivership proceedings than they would receive in an independent action. Third, there was no reason to believe that the court hearing the independent action—probably a state court in an unlawful detainer proceeding—would be any more likely than the district court to correctly resolve the dispute. The issues, involving the construction and enforceability of a commercial lease, did not require the expertise of a specialized tribunal. Thus, the district court had ample reasons for exercising its discretion as it did.

### III.

The second issue before us is whether the district court erred in concluding in its order of March 15 that the Schonfelds, by accepting "rental payments from the Receiver, on behalf of Lincoln Leasing Corporation, for the months of December, 1975, January, 1976 and February, 1976 . . . waived any defaults" under the nonpayment of rents and receivership clauses of the lease.[2]

 Waiver of a breach of a lease "is a matter of intent which necessarily depends on the factual circumstances of each case." *Sessions, Inc. v. Morton,* 491 F.2d 854, 858 (9th Cir. 1974). Important facts in this case are provisions in the lease regarding waiver negotiated approximately one year before the receivership commenced. One clause of the lease provides:

2. Both the transcript of the district judge's comments at the March 8 hearing and the comments of counsel at oral argument before us tend to indicate that the judge may have found a waiver of only the breach based on nonpayment of rents and not of the breach caused by the Receiver's extended possession. The district judge may have refused to permit a forfeiture under the receivership clause as an exercise of his equitable powers rather than on any theory of waiver.

NON–WAIVER. Lessee further covenants and agrees that if Lessor fails or neglects for any reason to take advantage of any of the terms hereof providing for the termination of this Lease or for the termination or forfeiture of the estate hereby demised, or if Lessor, having the right to declare this Lease terminated or the estate hereby demised terminated or forfeited, shall fail so to do, any such failure or neglect of Lessor shall not be or be deemed or be construed to be a waiver of any clause for the termination of this Lease or for the termination or forfeiture of the estate hereby demised subsequently arising, or as a waiver of any of the covenants, terms or conditions of this Lease or of the performance thereof. None of the covenants, terms or conditions of this Lease can be waived except by the written consent of Lessor.

Another states:

WAIVERS. No waiver by Lessor of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by Lessee of the same or any other provision. Lessor's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to or approval of any subsequent act by Lessee. The acceptance of rent hereunder by Lessor shall not be a waiver of any preceding breach by Lessee of any provision hereof, other than the failure of Lessee to pay the particular rent so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent.

The Schonfelds never waived in writing any breach of the lease.

Nevertheless, the district court's written order of March 15 speaks solely in terms of waiver as to both breaches. Given the constraints of appellate review, including the need for some clear concept of what the district court did and why, we believe it most appropriate for us to proceed on the basis of the written order.

Another fact also militates against a conclusion of waiver, or "knowing relinquishment of [the] right" to declare the lease in default. *See Sessions, Inc. v. Morton, supra,* 491 F.2d at 858. By establishing a breach by the lessee and declaring the lease in default, the Schonfelds stood to completely free themselves of an $800,000 obligation. It is close to inconceivable that the Schonfelds, obviously well aware of the terms governing that obligation, intended to waive a breach and thereby deprive themselves of this substantial windfall.

It may well be that the conduct of the Schonfelds and the Receiver regarding the payment and receipt of rents could support a finding of waiver of breach for nonpayment of rents and the late charge. But the Schonfelds sought to declare the lease in default not on the basis of the nonpayment of rents clause but rather on a separate provision, the receivership clause. The lease itself provided that waiver of one breach would not constitute waiver of a different breach. Our review of the record reveals no substantial countervailing evidence that the Schonfelds intended to waive the breach caused by the Receiver's more than 30-day possession of the shopping center. Accordingly, we conclude that the district court's implicit finding of fact underlying its order—that the Schonfelds intended to relinquish their rights under the receivership clause—is clearly erroneous.

## IV.

Waiver is not the only string in the Receiver's bow, however. At oral argument, the possibility of an additional defense, one based on an equitable mortgage theory, was raised.[3] Also, the Receiver has argued since it first filed its petition in district court that even if the Schonfelds establish their legal right to possession of the premises and cancellation of the $800,000 security interest, the district court is possessed of broad equitable powers which it should exercise in this case to prevent or at least delay the forfeiture.[4]

Neither of these theories or contentions is ripe for appellate review. Both require further development of the underlying facts. It is appropriate, therefore, that we remand this case to the district court where, if the district judge exercises his discretion to continue to hear this case on the merits, the parties can develop as fully as necessary the facts relevant to their dispute and the district court can make its determination.

Remand will serve other purposes also. The Schonfelds have raised before us two arguments based on facts occurring after they took their appeal. On May 7, 1976, the district court appointed a board of trustees to manage LLC. On June 7, 1976, the district court substituted this board for the Receiver "with respect to all petitions, applications and motions to which the Receiver was a party that was pending before this court on May 7, 1976." Because the board of trustees was in our view a successor receiver, we concluded that the district court's order neither mooted this appeal nor required a substitution of parties. The district court is obviously in the best position to determine the intended effect of its May

3. The equitable mortgage defense is suggested by the *result* of the December 1974 sale and lease-back transaction between LLC and the Schonfelds. For an initial cash payment of $550,000 to LLC, the Schonfelds receive a net return from the rent of $4,583.33 monthly. Annually, this amounts to $54,999.96, or an effective *interest* rate of a shade off 10%. (The irreducibility of the penny prevents greater exactness.) This suggests that the sale and lease-back may have been a sham transaction designed to disguise a $550,000 loan at 10% secured by LLC's ownership of and equity in the shopping center. Also, it should be noted that LLC's $800,000 security interest, to be can-

celled in the event LLC breached the lease, is exactly equivalent to the difference between the second trust deed given LLC by the Schonfelds in December 1974 and the then outstanding balance of the first trust deed earlier given a life insurance company by LLC.

4. The operation of this theory is perhaps best demonstrated by the case of *Weaver v. Hutson,* 459 F.2d 741 (4th Cir.), *cert. denied,* 409 U.S. 957, 93 S.Ct. 288, 34 L.Ed.2d 227 (1972). Because of our disposition of this appeal, we intimate no views on the applicability of this theory to the present case.

7 and June 7 orders on the present dispute. Remand will permit the district court to make such a determination.

The Schonfelds have also complained that the Receiver, and now, we assume, the board of trustees, have failed to maintain the shopping center in a proper manner.[5] They contend that the district court's order enjoining them from interfering with the Receiver's management of the shopping center is so broad that they are absolutely precluded from taking any steps to protect their interests. In our view, the district court's order is not so broad. It may not even deprive the Schonfelds of their statutory rights under 28 U.S.C. § 959(a) to sue for a remedy other than possession without leave of the district court.[6] But again, the district court is in the best position to clarify the scope of its own order and to entertain suggestions that the order be modified to meet changing circumstances. This the district court may do on remand.

REVERSED AND REMANDED.

---

5. In particular, the allegations are that the roof leaks, the parking lot is decorated with chuckholes and broken glass, and the subtenants are angry.

6. *See* note 1 *supra.*