622 F.2d 1363
 Fed. Sec. L. Rep. P 97,533
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
Walter WENCKE et al.
SUPERIOR MOTELS, INC., Petitioner-Appellant,
v.
R. N. GOULD and Securities and Exchange Commission, Receiver
and Real Party in Interest and Appellee.
 No. 78-1395.
 United States Court of Appeals,
Ninth Circuit.
 June 9, 1980.
 
 Alex A. Harper, Craig W. Walker, Michael G. Zybala, San Diego, Cal., for Securities and Exchange Commission.
 Faber L. Johnston, Johnston, Miller & Giannini, San Jose, Cal., for Wencke, et al.
 Appeal from the United States District Court for the Southern District of California.
 Before WRIGHT, KENNEDY and TANG, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 A district court may appoint a receiver in a securities fraud action brought by the Securities and Exchange Commission (SEC). The somewhat novel question presented by this appeal is whether a district court may also issue a stay, effective against nonparties and without prior notice to them, prohibiting "all investors, creditors, and other persons" from "(c)ommencing, prosecuting, continuing or enforcing any suit" against the receivership entities, except by leave of the court. Resolution of this case requires consideration of what securities law policies are furthered when a corporation not linked with the defendant in the SEC action is prevented from enforcing a prior state court judgment (and completing another prior state court proceeding) against a receivership entity.
 
 A. The Motel Complex
 
 2
 Appellant Superior Motels (Superior) built and owned a motel complex including a restaurant and cocktail lounge. In 1967, Superior entered into a sale and lease-back agreement with Lamplighter Properties whereby it leased the complex for a term of twenty years. On April 26, 1969, Superior assigned its lessee's interest to a corporation eventually known as Sun Fruit, Ltd.[1] On or about October 1, 1972, Sun Fruit sublet the motel complex to its wholly-owned subsidiary, Rinn Motor Hotels. Shortly thereafter, Rinn Motor Hotels sublet the motel property (but not the restaurant) to Rinn-Sunnyvale Motor Hotel, a partnership of which Rinn Motor Hotels held an 80% leasehold interest and was a copartner. The motel was known by various names, but is here referred to as the Executive Inn.
 
 
 3
 B. The Nevada Receivership and Superior's State Court Action
 
 
 4
 Early in 1972, defendants Walter Wencke and Richard Mets acquired control of Sun Fruit through fraudulent means. See SEC v. Wencke, 577 F.2d 619 (9th Cir.), cert. denied, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422, (1978) (hereinafter cited as Wencke I ). For the next two years, Wencke caused Sun Fruit to transfer most of its assets to corporations owned or controlled by Wencke in exchange for nominal cash and notes. In July, 1975, on behalf of one of Sun Fruit's creditors, Wencke petitioned a Nevada state court to place Sun Fruit into receivership and appoint himself as receiver. Wencke was appointed on August 7, 1975. This action was an attempt by Wencke to conceal his looting of Sun Fruit. Wencke I, supra, 577 F.2d at 622.
 
 
 5
 On November 25, 1975, Superior filed an action in California state court to regain possession of the leasehold interest in the Executive Inn. Sun Fruit, by the sublease described above, had assumed Superior's lease. The sublease contained a provision that the appointment of a receiver for the lessee would constitute a breach of the agreement, and Superior relied upon this clause to regain the motel lease and the right to operate it.[2] Named as defendants, among others, were Sun Fruit, Rinn Motor Hotels, Inc., and Rinn-Sunnyvale Motor Hotels. Allegedly because of defective service of process, Sun Fruit did not appear to contest the action, and on October 1, 1976, a Judgment in Unlawful Detainer by Default was entered against Sun Fruit by the state court. The court held that Superior was entitled to possession from Sun Fruit and "all persons holding possession of the premises under or through it or them." Rinn Motor Hotels and Rinn-Sunnyvale Motor Hotels claimed possessory rights apart from the Sun Fruit lease, and Superior proceeded against them in a separate action. On March 1, 1977, a state court in a memorandum decision ruled in Superior's favor, finding that the defendants had an interest in the property only by virtue of Sun Fruit's leasehold interest. Before the state court entered a final judgment, however, and also before Superior took possession of the premises, the federal district court entered a stay prohibiting further proceedings in the state court. We turn now to the federal proceedings.
 
 
 6
 C. SEC Proceedings, Receivership, and the Blanket Stay
 
 
 7
 On July 22, 1976, the SEC brought an action for injunctive and other equitable relief against Wencke, his wife, and several business entities controlled by Wencke and his associates, including Sun Fruit, Rinn Motor Hotels, Inc., and its subsidiary, Rinn-Sunnyvale Motor Hotel. On November 19, 1976, the district court orally granted the SEC's motion for a preliminary injunction and receivership. The temporary receiver appointed by the court was authorized to take custody of and conserve whatever assets might remain for the defrauded public investors until he could fully investigate the complex corporate relationships created by Wencke and audit the various corporate and trust entities to determine the extent of the receivership estate. On December 20, 1976, the district court granted injunctive and ancillary relief, effective as of November 19, based on its finding that the SEC had "made a prima facie case that Wencke has engaged in fraud and mismanagement with respect to defendant Sun Fruit (and other entities eventually placed in the receivership)," and that there was "a likelihood of irreparable harm to . . . shareholders of Sun Fruit unless the requested receivers are appointed." Because at least some of Sun Fruit's assets were subject to the Nevada receivership, the district court, out of concern for comity, declined to place these assets under the control of the federal receiver.
 
 
 8
 Following these preliminary orders, discovery began in the federal action. In order to attack the district court's jurisdiction, Wencke refused to be sworn at a deposition the SEC had scheduled. On the magistrate's recommendation, the district court struck the answers of all defendants and entered default judgments against them. To enable the receiver to take complete control over Wencke's entities, the district court also issued a permanent injunction which, among other things, enjoined further proceedings in the Nevada receivership and brought Sun Fruit within the federal receivership. Wencke I, supra, 577 F.2d at 621-22.
 
 
 9
 The district court entered Findings of Fact and Conclusions of Law and its Final Judgment of Permanent Injunction and Ancillary Relief on March 3, 1977, several months after the California state court determined that Sun Fruit and any sublessees of Sun Fruit had forfeited their leasehold interests in favor of Superior, and two days after the state court determined that Rinn Motor Hotels, Inc. and Rinn-Sunnyvale Motor Hotels had no other independent right to the disputed property. By virtue of the federal court order, the defendants[3] turned control over the entities placed in the receivership to the receiver, R. N. Gould. Gould was authorized to assume possession and control over all assets of the many entities in the receivership, to operate the entities on an ongoing basis, to hire lawyers and accountants to audit and investigate the financial condition and transactions of the entities, to resist all actions and claims brought against any of the entities, and to prosecute all claims which the entities might have.
 
 
 10
 The aspect of the court's decision which produced this appeal was a stay directed not only to all defendants, but also to nonparties. Except by leave of the court, all persons were stayed from continuing with any proceedings against the entities in receivership.[4]
 
 
 11
 On May 25, 1977, the Nevada court terminated the Nevada receivership for Sun Fruit "in the interest of comity." There have been no further proceedings in the California court. On May 16, 1977, Superior filed a petition ex parte with the district court for modification or relief from the court's order, to allow it to enforce the state court judgment. The court denied the motion but permitted Superior to make a formal motion for the same relief. Superior filed such motion, and on December 14, 1977, the district court refused to modify its injunction or grant an exception for Superior. Superior appeals from this denial.
 
 D. Wencke I
 
 12
 In Wencke I, we concluded that the district court "had jurisdiction to enjoin the Nevada state court." Id. at 623. Wencke argued, as does Superior in this appeal, that the Anti-Injunction Act, 28 U.S.C. § 2283, prevented the court from issuing an injunction. That section provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Relying on Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), and NLRB v. Nash-Finch Co., 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971), we held that section 2283 does not apply to injunctions issued at the request of the United States or administrative agencies enforcing applicable federal law. See also Puget Sound Gillnetters Ass'n v. United States District Court, 573 F.2d 1123, 1133 (9th Cir. 1978), rev'd on other grounds sub nom. Washington v. Washington State Commercial Fishing Vessel Ass'n, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). Superior argues that this limitation on section 2283 applies only if the issues involved in the state and federal actions are the same. It is true that in Leiter Minerals and Nash-Finch, supra, the contested issues were the same. The situation addressed in Wencke I, however, involved a state receivership resulting from what was, in essence, an insolvency proceeding, while the federal court was concerned with issues of securities fraud. We nevertheless held that section 2283 did not prevent the United States from securing an injunction against the former proceeding. The case before us presents a like situation since Superior's action to enforce its lease was to protect its rights as a creditor and the federal proceeding was in large part designed to protect the innocent shareholders and promote investor confidence. Therefore, section 2283 is not a bar to the injunction, even assuming the clause "necessary in aid of its jurisdiction, or to protect or effectuate its judgments," would not permit the injunction by its own terms.
 
 
 13
 We held also in Wencke I that where a state proceeding was simply another device to cover Wencke's fraud and the federal receiver was necessary to prevent further violations of federal securities laws and protect public investors, the appointment of a federal receiver was not barred by the state receivership.[5] If Superior's action were determined to be another instance of fraudulent conduct by Wencke or business entities under his control, we think there would be little question as to the federal court's power to enjoin enforcement of the judgment. Like the Nevada receivership, such a judgment would be simply another item of fraudulent conduct which the court could protect against. There has been no finding, however, that Superior is in any way linked to Wencke or that the state court action is part of any fraudulent scheme.
 
 
 14
 E. The Authority of the District Court to Stay All Proceedings
 
 
 15
 "(W)henever it appears to the Commission that any person is engaged or is about to engage in acts or practices" which violate the securities laws, the SEC may secure injunctive relief in a federal court. See 15 U.S.C. § 77t(b) (Securities Act of 1933); 15 U.S.C. §§ 78u(d) & (e) (Securities Exchange Act of 1934). A normal injunctive order entered pursuant to Fed.R.Civ.P. 65 is
 
 
 16
 binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.
 
 
 17
 Rule 65(d). Superior was not a party to the federal court proceedings, however, and there has been no finding that it falls within any of the categories of persons named in rule 65(d). In addition, there has been no finding that Superior has violated or is likely to violate the securities laws, or that its state court action is part of the fraud of any party in the federal action. Therefore, the authority of the district court to stay Superior from proceeding in another court must rest on some other grounds.
 
 
 18
 The federal courts have inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws.[6] This circuit has repeatedly approved imposition of a receivership in appropriate circumstances.[7] The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief.[8]
 
 
 19
 There is no dispute in this case as to the district court's general authority to impose a receivership over the various entities affected by Wencke's fraud; indeed, such authority was upheld in Wencke I. Moreover, the court may issue blanket stays against litigation in other courts by parties to the securities fraud action and others named in rule 65(d). See, e. g., SEC v. United Financial Group, 576 F.2d 217, 221 n.8 (9th Cir. 1978) (hereinafter cited as United Financial Group II ). The dispute regarding the district court's authority centers around its power to stay or enjoin nonparties from taking action against the entities in receivership, except by leave of the court. Superior contends that in none of the securities fraud cases relied on by the SEC did the district court attempt to fashion equitable relief binding on persons not enumerated in rule 65(d).[9]
 
 
 20
 The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action. The district court took control over the properties in question when it imposed the receivership and appointed Gould as receiver to manage those properties. The blanket stay was found by the district court necessary to achieve the purposes of the receivership. We conclude the district court had the power to enter the order.
 
 
 21
 Our conclusion finds support in several lines of decisions. This circuit, albeit in the context of discussing orders entered against parties, has approved imposition of blanket stays in SEC enforcement actions upon an appropriate showing, see SEC v. Lincoln Thrift Ass'n, 557 F.2d 1274, 1277 n.1 (9th Cir. 1977); United Financial Group II, supra, 576 F.2d at 221 n.8. Moreover, in Wencke I this court held, "The district court had jurisdiction to enjoin the Nevada state court." 577 F.2d at 623. Although the court did not discuss the question at length, this conclusion might be understood as a determination that stays directed to nonparties may be entered where necessary to protect the federal receivership.[10]
 
 
 22
 At least three other courts in securities fraud cases have entered stays nearly identical to that entered by the district court. See SEC v. An-Car Oil Co., 604 F.2d 114, 117 (1st Cir. 1979) (TRO enjoining "all creditors from commencing, prosecuting, continuing, or enforcing suit against (the entities put into receivership)"); Lankenau v. Coggeshall & Hicks, 350 F.2d 61, 62 (2d Cir. 1965) (staying "all persons . . . from commencing or continuing any suits against the defendant herein or his property other than suits to enforce liens . . ."); Jordan v. Independent Energy Corp., 446 F.Supp. 516, 520 (N.D.Tex.1978) (staying "all persons, firms or corporations from 'commencing, prosecuting, continuing or enforcing any suit or proceeding, or from executing or issuing or causing the execution or issuance of any court attachment . . . or other proceedings for the purpose of impounding or . . . interfering with any property owned by or in the possession of defendant . . .' "). Moreover, in United Financial Group II, in addition to the footnote referred to above, the court affirmed the broad power of the court to protect a receivership imposed in an SEC enforcement action: "When the receivership court takes jurisdiction of the debtor's estate, it has power to issue orders barring actions which would interfere with its administration of that estate. See Diners Club, Inc. v. Bumb, 421 F.2d 396 (9th Cir. 1970), and cases cited." 576 F.2d at 220. The case relied on by the court, Diners Club, Inc., was a bankruptcy case which reaffirmed in broad terms the "inherent powers of a court of equity to protect its control of a res in its custody." 421 F.2d at 398. The court in Diners Club, Inc., approved a restraining order against further proceedings in another court by a nonparty against the entity in receivership. Cf. also SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1105-06 (2d Cir. 1972).
 
 
 23
 Even apart from bankruptcy proceedings, which we discuss below, stays or injunctions effective against nonparties have been approved in a variety of other contexts. In United States v. Hall, 472 F.2d 261 (5th Cir. 1972), the district court had entered an injunction designed to reduce disruption in schools subject to the court's desegregation order. The injunction prohibited "all persons" from taking certain actions and provided for criminal contempt sanctions against "anyone having notice of this order." Id. at 263. The court of appeals affirmed the contempt conviction of a nonparty with notice despite the lack of a statute conferring express authority to issue such a stay.[11]
 
 
 24
 The type of stay entered by the district court in the case before us is a routine feature of bankruptcy proceedings. Indeed, the Bankruptcy Act specifically provides for stays of proceedings by nonparties upon the filing of a bankruptcy petition. See 11 U.S.C. §§ 362, 541. The power of a federal court to enter such stays, however, does not depend on specific congressional authorization such as that contained in the Bankruptcy Act. See Diners Club, Inc. v. Bumb, supra, 421 F.2d at 398. The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest.[12] Where, as here, the stay provides that parties may seek leave of the district court to proceed against the receivership entities, we hold that a district court in an SEC enforcement action may, upon an appropriate showing of necessity, stay proceedings against a court-imposed receivership, and that such a stay can be made effective against persons not parties to the SEC action who have notice of the stay. Implicit in our holding is the conclusion that rule 65(d) does not limit the power of a federal court to enter such orders.
 
 
 25
 Even conceding the power of the district court to enter a general stay, Superior contends that the court could not issue the stay here, since the California state court had already acquired "in rem" or "quasi-in rem" jurisdiction over the motel properties. There is authority to the effect that where a state court has taken control over property, in certain circumstances a federal court may not subsequently attempt to take control over the same property. See, e. g., Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Tweel v. Frankel, 444 F.Supp. 1071 (S.D.W.Va.1978); Stewart Securities Corp. v. Guaranty Trust Co., 394 F.Supp. 1069 (W.D.Okl.1975). See generally C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3631 (1976).[13] We assume arguendo that the California action between Superior and Sun Fruit could be characterized as quasi-in rem, since the action determined title to the leasehold interest as between the parties. See Smith v. Humble Oil and Ref. Co., 425 F.2d 1287 (5th Cir.), cert. denied, 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970).[14] We nevertheless conclude that the federal court was not prevented from staying further proceedings in the California case.
 
 
 26
 In Wencke I, this court approved the appointment of the federal receiver and upheld the district court's stay of the receivership in Nevada. This conclusion seems sufficient to defeat any broad argument that the federal court did not have the power to assert control over entities already under the control of a state court.
 
 
 27
 In addition, a federal court may assert control over property and enjoin persons from further proceedings in a state court where the subject matter of the two suits is different or the jurisdiction is not concurrent, at least where, as here, the state court has not taken actual possession of the property. An early statement of this rule appears in Harkin v. Brundage, 276 U.S. 36, 43, 48 S.Ct. 268, 271, 72 L.Ed. 457 (1928):
 
 
 28
 (W)here the jurisdiction is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction.
 
 
 29
 See also Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 196, 55 S.Ct. 386, 79 L.Ed. 850 (1935); Empire Trust Co. v. Brooks, 232 F. 641 (5th Cir.), cert. denied, 243 U.S. 655, 37 S.Ct. 480, 61 L.Ed. 948 (1916), appeal dismissed, 245 U.S. 634, 38 S.Ct. 133, 62 L.Ed. 522 (1917); United States v. Allen, 328 F.2d 377 (5th Cir. 1964). "Courts have been anxious to prevent direct interference without forcing one tribunal to be overly cautious about the possibility that a prior suit in another forum may involve the property." C. Wright, A. Miller & E. Cooper, supra § 3631 at 11. It is especially appropriate in an action like this one that the federal courts have the power, if necessary, to take control over an entity and impose a receivership free from interference in other court proceedings. The bases of the suits by Superior and the SEC differ; there are few judicial economies favoring permitting the state court action to proceed, see Colorado River Water Conservation District, supra, 424 U.S. at 818-20, 96 S.Ct. at 1246-48. There is a strong federal interest in insuring effective relief in SEC actions brought to enforce the securities laws. Finally, the stay does not deprive the state court judgment of effect; it merely postpones that effect. See David v. Hooker, Ltd., 560 F.2d 412, 418 (9th Cir. 1977). For all of the above reasons, therefore, we hold that the district court had jurisdiction to enter the orders it did.
 
 F. The Necessity for the Stay
 
 30
 Our conclusion that the court had power to enter the stay does not resolve the case. We must also address whether the district court misused its discretion in entering the stay or in not granting Superior leave to proceed. See Lincoln Thrift, supra, 557 F.2d at 1277; SEC v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973); Los Angeles Trust Deed & Mortgage Exchange, supra, 285 F.2d at 180-82.
 
 
 31
 The ultimate goals of SEC intervention were protection of innocent shareholders and enhancement of investor confidence in the securities markets. Appointment of the receiver in this case furthered several subsidiary policies of the securities laws. The assets of the corporate entities were marshalled and preserved against further misappropriation and dissipation; the financial affairs of the entities needed to be clarified for the benefit of innocent shareholders; the receiver and his staff could conduct independent investigation of claims the entities might have against former management or other parties, prosecution of which would benefit investors and deter future violations; and defenses against possibly fraudulent or collusive actions brought against the entities could be discovered and asserted. As we held in Wencke I, these are legitimate justifications for the district court's imposition of a receivership. See also SEC v. United Financial Group, Inc., 474 F.2d 354, 358 (9th Cir. 1973).
 
 
 32
 With regard to issuance of the blanket stay, the SEC and the receiver claim there was a danger that some litigation commenced or prosecuted against the receivership entities might be collusive or fraudulent, thus further dissipating the assets of the receivership entities to the detriment of innocent shareholders. The preliminary report of the receiver Gould stated in part:I find that Walter Wencke is defendant in various court actions involving corporations within the overall corporate galaxy, and we are discovering additional litigation on a daily basis . . . (H)e continues to remain in control of many corporations now identified by our investigations. The corporations in the receivership estate have dealt, and must continue to deal with those corporations under Wencke's control, placing the Temporary Receiver in a difficult and impractical position.
 
 
 33
 The receiver and the district court also felt it essential for the receiver to be given time to explore all the complex transactions and aspects of the receivership estate so that innocent shareholders suffered no further harm.
 
 
 34
 A receiver appointed by a court in the wake of a securities fraud scheme may encounter difficulties sorting out the financial status of the defrauded entity or entities. There may be a genuine danger that some litigation against receivership entities amounts to little more than a continuation of the original fraudulent scheme. Similarly, the securities fraud may have left the finances of the receivership entities so obscure or complex that the receiver is hampered in conducting litigation. Moreover, the expense involved in defending the many lawsuits which often are filed against an entity in the wake of a securities fraud scheme may be overwhelming unless some are temporarily deferred. A stay of proceeding against receivership entities except by leave of the court may be an appropriate response to the above concerns, and the district court did not abuse its discretion in this case by entering the blanket stay.
 
 
 35
 There remains the question whether denial of leave to proceed in Superior's particular case was justified. In denying Superior's ex parte motion for relief from the stay, the district court found:
 
 
 36
 The Receiver must be given an opportunity to progress in his assigned tasks before this Court contemplates lifting any stays. To remove the stay as requested could seriously damage the Receivership estate by, among other reasons, disrupting the orderly administration by the Receiver of this Case.
 
 
 37
 The court adopted a similar rationale in denying Superior's written motion:
 
 
 38
 To remove the stay would make it extremely burdensome or impossible for the Receiver to perform his mandated duties, to the detriment of legitimate creditors and shareholders.
 
 
 39
 Determining whether an exception should be made in a particular case to a previously entered blanket stay involves a comparison of the interests of the receiver (and the parties the receiver seeks to protect) and of the moving party. We have discussed above the reasons why stays may be necessary to permit the receiver to carry out his tasks of sorting out the affairs of the entities in the receivership estate. The interests of the moving party are also relevant. The district court should consider whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if it is not permitted to proceed. The merit of the moving party's claim is also a relevant consideration. Where the claim is unlikely to succeed (and the receiver therefore likely to prevail), there may be less reason to require the receiver to defend the action now rather than defer its resolution. On the other hand, where the likelihood that the receiver will prevail is small, when the receiver's position is considered realistically and not in the abstract, there is less reason to permit the receiver to avoid resolving the claim; a blanket stay should not be used to prejudice the rights which innocent and legitimate creditors may have against the receivership entities, see Los Angeles Trust Deed & Mortgage Exchange, supra, 285 F.2d at 182.
 
 
 40
 The time at which the motion for relief from the stay is made also bears on the exercise of the district court's discretion. Where the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim.[15] As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance.
 
 
 41
 Apparently because of Sun Fruit's lack of resources, investigation of its financial status proceeded more slowly than that of other businesses in the receivership. With regard to litigating Superior's claim, however, no new material information appears to have been developed at least since the receiver's report of July 29, 1977, and the receiver's Memorandum of Points and Authorities filed on July 19, 1977, in response to Superior's motion for leave to proceed in state court. In the report, the receiver discussed the many lawsuits filed by and against receivership entities. With regard to Superior's action, the receiver said in part:
 
 
 42
 In (the) Receiver's opinion this suit and the preliminary judgment are based on a highly technical interpretation of a contractual relationship. The facts are that all parties to the contract have received what they bargained for and none of the parties have been damaged. . . . Counsel advises that we have a good position relative to a new trial or appeal. At this point in time the stay is invaluable to the Receivership estate, affording it the opportunity to deal with this problem when time and resources permit.
 
 
 43
 In the memorandum of points and authorities, the receiver advanced essentially the same arguments which it advanced in its brief to this court dated September 14, 1978, more than a year later. The receiver stated:
 
 
 44
 On October 1, 1976, a default judgment was entered against Sun Fruit, Ltd., one of the defendants in the State Court action. At that time Mr. Walter Wencke was the receiver appointed by a Nevada State Court for Sun Fruit, Ltd. It appears he chose, rather than to defend upon the merits, to take the position that Sun Fruit was not served. Richard Mets, former President of Sun Fruit, had been served, but at the time he had either resigned or been terminated and, therefore, he had no connection with Sun Fruit, and could not accept service. Stated differently, the Superior Court was without jurisdiction.
 
 
 45
 In light of this history, we doubt the receiver can continue to justify denial of Superior's motion on the grounds that he needs more time to discover new facts relevant to Superior's state court action.
 
 
 46
 The receiver has filed a complaint in state court seeking to have the state court judgment of October 1, 1976, set aside. Superior contends the receiver has not pursued the claim and the action would be dismissed if he did, and to date there has been no adjudication that the state court lacked jurisdiction or that its determination is unenforceable. The same is true with regard to the later adjudication against the two subsidiaries of Sun Fruit regarding any nonleasehold property interests they might have. The costs of litigating the validity of the state court determination are unclear from this record. The value of the motel property to the receivership estate is substantial, although this factor does not provide unequivocal support for refusing to lift the stay, see p. 1375 infra.
 
 
 47
 The substantial discretion which a district court possesses in making this type of decision leads us to affirm the denial of Superior's motion. That denial, however, occurred on December 14, 1977, more than two years ago. In light of our holding below, the district court will in any event be required to determine whether a bond is necessary to protect Superior's interest. We also direct the court on remand to determine whether the stay against Superior can still be justified.[16]
 
 F. Indemnity Bond
 
 48
 A district court has the discretion to require, in appropriate circumstances, some form of special security for a claim against an entity in receivership. Donellan Jerome, Inc. v. Trylon Metals, Inc., 270 F.Supp. 996 (N.D.Ohio 1967). See also Redding & Co. v. Russwine Construction Corp., 417 F.2d 721, 727 (D.C.Cir.1969). There is no dispute in this case that the receiver has been remitting to the lessor the monthly rent on the properties, $10,000 per month. Superior contends, however, that the receiver has on the average been collecting approximately $20,000 per month over and above an amount sufficient to cover the rental payments. Should Superior ultimately be held entitled to the leasehold interest by virtue of the Nevada receivership and California court proceedings, Sun Fruit might be liable to Superior for substantial sums. Although Sun Fruit is not now insolvent or in bankruptcy proceedings, statements by both the receiver and Superior indicate that Sun Fruit has few assets, and many creditors and other parties want to bring suit against it. Accordingly, it is not apparent to us that the stay as applied to Superior simply maintains the status quo.
 
 
 49
 We therefore remand this case for further proceedings, at which time the district court should reexamine the necessity for a stay, and if the stay is continued in effect, determine whether a security bond should be required.
 
 
 50
 AFFIRMED in part and REMANDED for further proceedings.
 
 
 
 [1]
 As of April 26, 1969, the corporation was known as Royal Executive Inns of America. It was later renamed the Rinn Corporation, and on March 31, 1974, it was renamed Sun Fruit, Ltd
 
 
 [2]
 The lease provided in part:
 
 
 [7]
 Either (a) the appointment of a receiver to take possession of all or substantially all of the assets of lessee, or (b) a general assignment by lessee for the benefit of creditors, or (c) any action taken or suffered by lessee under any insolvency or bankruptcy act shall constitute a breach of this lease by Lessee
 
 
 [3]
 The court's injunction was effective against all persons named in Fed.R.Civ.P. 65(d)
 
 
 [4]
 "(A)ll investors, creditors, and other persons, and all others acting on behalf of any such investor, creditor or other person, including sheriffs, marshals, other officers, deputies, servants, agents, employees, and attorneys," were stayed from:
 (1) Commencing, prosecuting, continuing or enforcing any suit or proceeding against the entities in receivership, except that such actions may be filed to toll any statute of limitations;
 (2) Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property owned by or in the possession of the entities in receivership or the receiver, wheresoever situated;
 (3) Attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement with any of the entities in receivership or any entity controlled by them; and
 (4) Doing any act or thing whatsoever to interfere with the taking control, possession, or management, by the receiver appointed herein, of the property and assets owned, controlled or in the possession of the entities in receivership, or to in any way interfere with or harass said receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the entities in receivership.
 The district court entered an Order Clarifying the Final Judgment on April 5, 1977. The order stated that "Royal Executive Inn-Sunnyvale, Inc." and "its subsidiaries," as used in the March 3 orders, included Rinn-Sunnyvale Motor Hotel. We agree with the appellee Gould and the SEC that this order is not a significant fact in this case. We reject Superior's contention that the court added a new party to the action and subjected it to orders previously entered against other parties.
 
 
 [5]
 Wencke was convicted of mail fraud and making false statements to the SEC. We affirmed the conviction, United States v. Wencke, 604 F.2d 607 (9th Cir. 1979)
 
 
 [6]
 See generally Farrand, Ancillary Remedies in SEC Civil Enforcement Suits, 89 Harv.L.Rev. 1779 (1976)
 
 
 [7]
 See SEC v. United Financial Group, Inc., 576 F.2d 217 (9th Cir. 1978); Wencke I, supra; SEC v. Lincoln Thrift Ass'n, 557 F.2d 1274 (9th Cir. 1977); SEC v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973); Los Angeles Trust Deed & Mortgage Exchange v. SEC, 285 F.2d 162 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). See also SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103-06 (2d Cir. 1972); SEC v. Charles Plohn & Co., 433 F.2d 376 (2d Cir. 1970); SEC v. Bowler, 427 F.2d 190 (4th Cir. 1970); SEC v. Bartlett, 422 F.2d 475, 477-79 (8th Cir. 1970); SEC v. Keller Corp., 323 F.2d 397, 403 (7th Cir. 1963); SEC v. Fifth Avenue, Coach Lines, Inc., 289 F.Supp. 3 (S.D.N.Y.1968), aff'd, 435 F.2d 510 (2d Cir. 1970); Lankenau v. Coggeshall & Hicks, 350 F.2d 61 (2d Cir. 1965)
 
 
 [8]
 See SEC v. United Financial Group, Inc., 474 F.2d 354, 358-59 (9th Cir. 1973); Los Angeles Trust Deed & Mortgage Exchange, supra, 285 F.2d at 181-82; SEC v. Charles Plohn & Co., supra; SEC v. Bowler, supra; SEC v. Bartlett, supra. See also Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964)
 
 
 [9]
 It is unclear to us that the district court's stay of proceedings, as applied to the facts of this case, went any further than the normal rule preventing suits against a federal receiver except by leave of the court. See United Financial Group II, supra, 576 F.2d at 221 n.8; Lincoln Thrift, supra, 557 F.2d at 1277 n.1; 7 Moore's Federal Practice P 66.07(2) (1979); 28 U.S.C. § 959
 
 
 [10]
 An alternative explanation is that the injunction referred to by the court was effective against Wencke, the receiver in the Nevada proceedings, and his associates
 
 
 [11]
 In a passage relevant to this case, the court said:
 The principle that courts have jurisdiction to punish for contempt in order to protect their ability to render judgment is also found in the use of in rem injunctions. Federal courts have issued injunctions binding on all persons, regardless of notice, who come into contact with property which is the subject of a judicial decree. A court entering a decree binding on a particular piece of property is necessarily faced with the danger that its judgment may be disrupted in the future by members of an undefinable class those who may come into contact with the property. The in rem injunction protects the court's judgment.
 472 F.2d at 265-66 (citations omitted). See also United States v. Crookshanks, 441 F.Supp. 268, 270 (D.Or.1977) ("(A) court can enjoin non-parties whose actions threaten to interfere with compliance with prior orders of the court."). Cf. United States v. Dean Rubber Mfg. Co., 71 F.Supp. 96 (W.D.Mo.1946).
 Our reliance on this case does not depend on the court's determination that the district court's order more closely resembled a TRO than a preliminary or permanent injunction. See 472 F.2d at 267-68.
 
 
 [12]
 See, e. g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964); Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944); Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). See also SEC v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973); Los Angeles Trust Deed & Mortgage Exchange v. SEC, 285 F.2d 162 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961); SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975)
 
 
 [13]
 Cases relied on by Superior such as McGough v. First Arlington Nat'l. Bank, 519 F.2d 552 (7th Cir. 1975), are inapposite because the securities fraud action was brought by a private party, not the SEC, and because the federal court had not assumed control of property by imposing a receivership. The only alleged threat to the district court's jurisdiction in that case was operation of res judicata and collateral estoppel doctrines
 
 
 [14]
 Although the details of the state court proceedings are not before us on this appeal, we have some question regarding how, on Superior's theory, the California court could acquire jurisdiction over the disputed property when it was already subject to a receivership in Nevada
 
 
 [15]
 The merits of the moving party's claim may also be more difficult to evaluate at this time
 
 
 [16]
 The record indicates that Boise Cascade, Inc., was permitted to enforce a lien against the receivership, while the State of California was denied permission to institute a fraud action against Sun Fruit, and that a suit was permitted against another of the receivership entities, see Wencke I, supra at 623