**BUTTE MINING PLC, Tzarina & Travona Mining Corp., Central Butte Mining Corp., and North Butte Mining Company, Plaintiffs,**

v.

**Clive J. SMITH, et al., Defendants.**

**No. CV–92–031–BU.**

United States District Court,
D. Montana,
Butte Division.

Jan. 31, 1995.

---

**1156**

William A. Rossbach, Rossbach & Whiston, PC, Missoula, MT, Herbert I. Deutsch, Robert B. Frey, Vincent R. Coffey, Alfred N. Metz, Ganine Gambale, Roy A. Heimlich, Deutsch & Frey, New York City, Karl J. Englund, Englund Law Office, Missoula, MT, for plaintiffs Butte Min. PLC, Tzarina & Travona Min. Corp., Cent. Butte Min. Corp., North Butte Min. Co.

Joan E. Cook, Miller & Cook, Great Falls, MT, James Sabella, Bree, Abbott & Morgan, New York City, for defendants Clive J. Smith, C.J. Smith Life Interest Trust, Fiona Smith, Helen Smith.

Randy J. Cox, Boone, Karlberg & Haddon, Missoula, MT, for defendant Kerry Harmanus.

John D. Stephenson, Jardine, Stephenson, Blewett & Weaver, PC, Great Falls, MT, Thomas Sullivan, Jenner & Block, Chicago, IL, for defendants Robertson Group PLC, Robertson Research (Singapore) Private Ltd., Robertson Research Intern. Ltd., Simon Engineering, PLC.

John D. Stephenson, Jardine, Stephenson, Blewett & Weaver, PC, Great Falls, MT, for defendant Robertson Montana, Inc.

R.D. Corette, Corette, Pohlman, Allen, Black & Carlson, Butte, MT, for defendants Montana Min. Properties, Inc., John J. Oitzinger, Western & Pacific Resources, Ltd., Black Rock Min. Ltd., Blue Bird Min. Investments Ltd., East Ridge Ltd., Eureka Min. Investments Ltd., Goldbrick Min. Investments Ltd., Original Butte Investments Ltd., Oro Fino Placer Ltd., Mountain Consol. Investments Ltd., Silver Bow Investments Ltd., Wabash Min. Ltd., West Butte Investments Ltd., Yankee Doodle Min. Investments Ltd., Black Rock Min. Co., Blue Bird Min. Co., East Ridge Min. Co., Eureka Min. Co., Goldbrick Min. Co., Original Butte Min. Co., Oro Fino Placer Min. Corp., Mountain Consol. Min. Co., Silver Bow Consol. Corp., Wabash Min. Co., West Butte Metals, Inc., Yankee Min. Co.

Ronald P. MacDonald, Datsopoulos, MacDonald & Lind, Missoula, MT, for defendants Dennis Washington, Milton Datsopoulos.

Maxon R. Davis, Cure, Borer & Davis, PC, Great Falls, MT, for defendants Herbert Roy Bichan, John Thomas Clarke.

David McLean, Knight, Dahood, McLean, Everett & Dayton, Anaconda, MT, for defendant K. Malcolm Clews.

Maria Sorolis, Brant & Moore, Jacksonville, FL, for defendant D.C. Wilkinson.

Robert E. Sheridan, Garlington, Lohn & Robinson, Missoula, MT, for defendants Byatt, Michau & Smart, M.P. Byatt, M.P. Byatt & Co.

Edward Beaudette, Beaudette Law Office, Anaconda, MT, Stephen VanDrake, John Raboin, Raboin Law Office, Brainerd, MN, for defendant Jay Mineral Services Ltd.

Richard F. Gallagher, Church, Harris, Johnson & Williams, PC, Great Falls, MT, for defendants Ernst & Young Intern., Ernst & Young UK, a U.K. partnership.

Richard F. Gallagher, Church, Harris, Johnson & Williams, PC, Great Falls, MT, John Matson, Ernst & Young, New York City, for defendant Ernst & Young US, a U.S. partnership.

Joan E. Cook, Miller & Cook, Great Falls, MT, for defendants Finchley Investments Ltd., Newsham Investments Ltd., Newsham No. 1 Trust, Newsham No. 2 Trust.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### BACKGROUND

 The plaintiffs, Butte Mining PLC ("Butte Mining"), and three of that entity's wholly-owned Montana subsidiaries—Tzarina & Travona Mining Corp. ("Tzarina"), Central Butte Mining Corp. ("Central Butte"), and North Butte Mining Company ("North Butte"), instituted the present action charging the defendants engaged in a pattern of activity designed to defraud plaintiffs in relation to certain securities transactions having their situs in England. Plaintiffs, invoking the federal question jurisdiction of this court under 28 U.S.C. § 1331, advance federal claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78g(b), Rule 10b–5 of the Securities & Exchange Commission, 17 C.F.R. § 240.10b–5 [Count VII]; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d) [Count XII].[1] Plaintiffs also advance ten claims for relief predicated upon state common law, urging the court to assert supplemental jurisdiction over these claims. Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, lack of personal jurisdiction, failure to plead fraud with sufficient particularity, insufficiency of service of process, improper venue, and upon the ground of *forum non conveniens*.[2] Also before the court are numerous discovery related motions submitted by both plaintiffs and defendants. For the reasons stated below, the court finds it appropriate to dismiss all of the federal claims advanced against the defendants for lack of subject matter jurisdiction. Because supplemental jurisdiction over the state-law claims is dependent upon the court's federal question jurisdiction (28 U.S.C. § 1367(a)), the state-law claims are also appropriately dismissed. In light of this ruling, the court does not find it necessary to consider the defendants' other jurisdictional and merit challenges.

### FACTS [3]

 This action can be properly characterized as a shareholder derivative suit. The

---

1. The RICO claim is grounded upon alleged acts of securities fraud (15 U.S.C. § 78j), mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343).

2. When motions challenging the merits and jurisdiction are before the court, the court must first consider the jurisdictional objections. A judgment on the merits cannot be decided before the court has assumed jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed.

939 (1946); *Harmon v. Superior Court*, 307 F.2d 796, 798 (9th Cir.1962).

3. The facts summarized below include all pertinent facts presented in the pleadings and affidavits. When considering a challenge to subject matter jurisdiction, the court is not confined to the allegations in the Complaint, but may consider all evidence before it, including pertinent facts presented by affidavit. *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 1010–11, 91 L.Ed. 1209

principal plaintiff, Butte Mining, is a United Kingdom corporation headquartered in London, England. The 78 defendants named in the 89–page Complaint include Butte Mining's promoters and initial shareholders, and an array of corporations, partnerships, trusts, attorneys and citizens from the United Kingdom, Australia and the United States.

Reduced to its essentials, the Complaint alleges a conspiracy, lasting four years (1987–1991), in which Butte Mining's promoters and initial shareholders, with the assistance of the other defendants, exchanged the interest they held in certain mining properties located in the State of Montana for excessive amounts of Butte Mining stock, and then compelled Butte Mining to publicly issue its stock, at an inflated rate, on the London Stock Exchange, thereby generating large profits for the promoters and initial shareholders. Additionally, it is alleged that the defendants wrongfully diverted corporate assets for their own benefit, and wasted other corporate assets. The claims advanced by the plaintiffs are predicated upon events that occurred both before and after the formation of Butte Mining.

### Activities Occurring Prior to the Formation of Butte Mining

In July of 1987, Butte Mining's four promoters—defendants Laith Reynolds, Kerry Harmanus,[4] Clive Smith[5] and Robertson[6] (hereinafter collectively referred to as the "Promoters")—purchased four Montana mining properties from defendant Dennis Washington,[7] and vested title to the referenced properties · in Tzarina, Central Butte and North Butte, the three Montana "shell" corporations named as co-plaintiffs.[8] All of the stock of Tzarina, Central Butte and North Butte was owned by Tzarina & Travona Investments Limited ("Tzarina Limited"), Central Butte Investments Limited ("Central Butte Limited"), and North Butte Investments Limited ("North Butte Limited"), respectively, each a United Kingdom holding

---

(1947); *McCarthy v. United States,* 850 F.2d 558 (9th Cir.1988).

For purposes of the pending motions challenging subject matter jurisdiction, all factual assertions in the Complaint are accepted as true unless controverted by the movants. *Trentacosta v. Frontier Pac. Aircraft Industries,* 813 F.2d 1553, 1558–59 (9th Cir.1987).

4. Defendants Reynolds and Harmanus are both Australian nationals. Reynolds resides in Canada.

5. Clive Smith is a citizen and resident of England.

6. "Robertson" is a collection of four defendants: Robertson Group Plc; Robertson Research (Singapore) Private Limited; Robertson Research International Limited; and Robertson Montana Inc.; and a non-defendant entity—Robertson Mining Finance Limited.

Robertson Group Plc is a public limited company organized under the laws of England and Wales, with its principal place of business in Llandudas, Wales. The other Robertson entities are subsidiaries of Robertson Group Plc. The Robertson defendants, with the exception of Robertson Research (Singapore) Private Limited, are mining and consulting engineers. Robertson International and Robertson Montana provided mining reports and analyses to Butte Mining. In 1991,

Robertson became a wholly-owned subsidiary of defendant Simon Engineering, Plc.

7. Washington is a Montana resident. Also named as a defendant is Washington's Montana attorney, Milton Datsopoulos.

8. Tzarina received the "Tzarina & Travona Claim Block," Central Butte received the "Rainbow Claim Block," and North Butte received the · "Margaret Ann Claim Block," and the "Goldsmith Claim Block."

The mining properties were actually purchased by a Montana corporation known as Montana Mining Properties ("MMP"), which was formed in 1986, and owned and operated by the four Promoters as a joint venture.

Contemporaneous with these acquisitions, MMP purchased additional mining properties from Washington and vested title in a number of other Montana shell corporations. These other mining properties are referred to in the Complaint as the "withheld properties".

The Montana shell corporations in which these other properties were vested, all of which are named as defendants, consist of: Black Rock Mining Co., Blue Bird Mining Co., East Ridge Mining Co., Eureka Mining Co., Goldbrick Mining Co., Original Butte Mining Co., Oro Fino Placer Mining Corp., Mountain Con Mining Co., Silver Bow Consolidated Corp., Wabash Mining Co., West Butte Metals, Inc. and Yankee Mining Co.

company.[9] All of the Montana shell corporations and the United Kingdom holding companies had been previously created by a group of defendants referred to in the Complaint as the "Control Group."[10] All of the stock in the United Kingdom holding companies was owned by the defendants described in the Complaint as the "Controlled Entities." *See*, fn. 10, *supra*. Plaintiffs speculate that the Controlled Entities were owned and controlled by the Promoters and other members of the Control Group.[11]

### Activities Occurring Subsequent to the Formation of Butte Mining

In August of 1987, the Promoters and the Controlled Entities, with the assistance of Byatt[12], Bryant & Co., and Myles, allegedly established and organized Butte Mining.[13] At that juncture, there were no public shareholders in Butte Mining, and all of the stock in Butte Mining was owned by the Controlled Entities.

The first act of securities fraud allegedly occurred one month after Butte Mining's formation, when Butte Mining purchased, from the Controlled Entities, all of the common stock of Tzarina Limited in exchange for 49,500,000 shares of Butte Mining stock.[14] Plaintiffs allege Butte Mining was defrauded because the value of the Butte Mining stock greatly exceeded the value of the assets held by Tzarina Limited.[15]

The second act of securities fraud allegedly occurred in October of 1987 when Butte Mining made a public offering of 10,000,000 shares of its stock on the London Stock Exchange, at which time the Promoters contemporaneously sold 4,500,000 shares of their own stock.[16, 17] The Complaint alleges the

9. The stock of the other Montana shell corporations was owned by the following United Kingdom holding companies, all of which are named as defendants in the present action:

Black Rock Mining Limited, Blue Bird Mining Investments Limited, East Ridge Limited, Eureka Mining Investments Limited, Goldbrick Mining Investments Limited, Original Butte Investments Limited, Oro Fino Placer Limited, Mountain Consolidated Investments Limited, Silver Bow Investments Limited, Wabash Mining Limited, West Butte Investments Limited and Yankee Doodle Mining Investments Limited.

10. The "Control Group" purportedly consists of the following defendants:

Laith Reynolds; Kerry Harmanus; Clive Smith; Herbert Bichan; John Clarke; Clive Kendall; Malcolm Clews; John Oitzinger; D.C. Wilkinson (all United Kingdom citizens); Bryant & Co. (a U.K. accounting firm); Kelvin Myles (an officer in Bryant & Co.); Helen and Fiona Smith (daughters of Clive Smith); the C.J. Smith Life Interest Trust (a U.K. Trust); Robertson; MMP and the following U.K corporations and trusts referred to in the complaint as the "Controlled Entities":

Areadale Limited, Bernal Asia Limited, Circlefibre Limited, Dovequote Limited, Finchley Investments Limited, Gastroma Limited, Newsham Investments Limited, Perrot Investments Limited, Polex Investments Limited, Radial Investments Limited, Reigate Resources Limited, Rentaflex Limited, Richard Pearce & Sons Limited, Robertson Research Private (Singapore) Limited, Sabre Trust Company Limited, Spinaltap Limited, Tarotwoman Limited, Vale Pacific Limited, Easewise Limited, Cameo Investments & Finance Company Limited, Astra Properties Limited,

Newsham No. 1 Trust, Newsham No. 2 Trust, and C.J. Life Interest Trust.

11. Plaintiffs allege that Clive Smith, Bryant & Co., and/or Myles and/or their employees were officers, directors and/or shareholders of many of the Controlled Entities.

12. The Complaint describes "Byatt" as a collection of defendants consisting of:

Byatt, Michau & Smart (a firm of attorneys and former attorneys located in London); M.P. Byatt (a London attorney who represented Butte Mining in its corporate matters and was the principal drafter of various prospectuses and regulatory filings); and M.P. Byatt & Co. (the successor firm to Byatt, Michau & Smart).

13. The founding officers and directors of Butte Mining allegedly included Myles and other persons associated with Bryant & Co.

14. *See*, Complaint ¶ 51.

15. Tzarina Limited's only significant tangible assets were two Montana Mining properties—the Tzarina & Travona Claim Block, and the Rainbow Claim Block. Tzarina Limited possessed the Tzarina & Travona Claim Block through its ownership of Tzarina. Tzarina Limited became the owner of the Rainbow Claim Block when it purchased Central Butte in early September of 1987. (Complaint ¶¶ 46, 54–55).

16. *See*, Complaint ¶¶ 53–54.

17. It is imperative to note, the offering documents prepared in connection with the public stock offering expressly stated that Butte Mining shares could "not be offered or sold, directly or

**1160**

Promoters and Controlled Entities realized excessive profits from the sale of their stock in Butte Mining, because of the stock's inflated value resulting from the misrepresentations and omissions contained in the Listing Particulars used in conjunction with the public offering.[18] The misrepresentations were allegedly caused by the Promoters and the Controlled Entities, with the assistance of the officer/director defendants,[19] Ernst & Young,[20] Bryant & Co., Myles, Byatt, Jay Mineral Services Limited ("Mineral"),[21] Washington and Datsopoulos. The third act of securities fraud allegedly occurred in April of 1988, when the Controlled Entities (who at this juncture controlled approximately 75% of Butte Mining's stock), sold North Butte Limited to Butte Mining.[22] North Butte Limited's only significant asset was the Margaret Ann Claim Block.[23] Butte Mining delivered 40,000,000 newly-issued shares of "treasury stock" in exchange for all of the shares of North Butte Limited. The Complaint alleges the Promoters and Controlled Entities again realized excessive profits [24] because of the inflated value of the Butte Mining stock resulting from misrepresentations in the Listing Particulars. The misrepresentations were allegedly made by the Promoters and Controlled Entities, with the assistance of the officer/director defendants, Ernst & Young, Bryant & Co., Myles, Byatt and Mineral.[25] It is also alleged that Butte Mining was injured as a result of this acquisition, because the purchase diluted public ownership in Butte Mining and decreased the

indirectly, in the U.S. to or for the benefit of any North American Person." *See,* Complaint ¶ 59(h).

18. The principal misrepresentations and omissions related to CERCLA liability. Defendants allegedly omitted to disclose that in August of 1987, the Environmental Protection Agency named Tzarina and Central Butte as parties potentially responsible for CERCLA liabilities with respect to the mining properties; liabilities which had the potential effect of exhausting the resources of Tzarina, Central Butte and Butte Mining, including the proceeds from the public offering. (Complaint ¶¶ 59(i)–(n), and 69(a) and (c)).

19. The Complaint describes the "officer/director" defendants as Clive Smith, Bichan, Clarke, Kendall, Clews, Oitzinger, Wilkinson, and George Manson.

20. The Ernst & Young defendants consist of: Ernst & Young (the U.S. Partnership), Ernst & Young (the U.K. Partnership), and Ernst & Young International, Ltd. Plaintiffs use the generic reference "E & Y" throughout the Complaint for all three entities without identifying which entity engaged in the particular acts. For purposes of this memorandum, all three entities will be referred to collectively as "Ernst & Young".
Plaintiffs allege Ernst & Young was retained as independent certified public accountants to provide accounting and management services for Butte Mining, Central Butte and Tzarina in connection with the public offering, and that Ernst & Young was responsible for various alleged accounting errors and misstatements appearing in the Listing Particulars. (Complaint ¶¶ 62 & 135).

21. Mineral and Robertson provided opinions on the Montana mining properties that were included in the Listing Particulars for the public offering. The opinions were based upon Robertson's valuation and ten-year revenue and cost analysis of Butte Mining's reserves. The opinions allegedly contained a number of omissions and misrepresentations. (Complaint ¶ 60).

22. *See,* Complaint ¶ 64–65.

23. Although North Butte Limited originally owned both the Margaret Ann Claim Block and the Goldsmith Claim Block, the latter mining property was sold by North Butte Limited for $100,000 prior to the April 1988 acquisition by Butte Mining. (Complaint ¶ 65).

24. In particular, the Complaint alleges the Promoters and Controlled Entities received Butte Mining stock valued at $95,409,068 in exchange for the Margaret Ann Claim Block which the Controlled Entities and Promoters had recently acquired for approximately $90,566. (Complaint ¶¶ 46 and 65).

25. Mineral and Robertson provided opinions on the Montana mining properties that were included in the Listing Particulars for the North Butte Registration. The opinions were based upon Robertson's valuation and ten-year revenue and cost analysis of North Butte's reserves. The opinions allegedly contained numerous misstatements and omissions. (Complaint ¶ 70).

Ernst & Young were retained as independent certified public accountants and financial advisors to provide management services and accounting reports for Butte Mining, Central Butte and Tzarina in connection with the North Butte Registration. Ernst & Young allegedly directed and/or acquiesced to a number of misrepresentations and omissions in the Listing Particulars. (Complaint ¶ 71).

credibility and goodwill of the company in the marketplace.[26]

In addition to these alleged acts of securities fraud, the Complaint states that from 1988 through 1991, the Control Group caused the plaintiffs to suffer injuries: by purchasing the "withheld properties" from defendant Washington;[27] by paying exorbitant fees and expenses to themselves and other defendants;[28] by compelling Butte Mining to undertake uneconomic attempts at mining or processing uneconomic dumps;[29] by precluding Butte Mining from purchasing the securities of Montana Resources, Inc.;[30] and by concealing the alleged wrongdoing described above.[31]

## DISCUSSION

### Motions to Dismiss Securities Fraud Claims For Lack of Subject Matter Jurisdiction

■ Plaintiffs invoke the court's subject matter jurisdiction under section 27 of the Securities Exchange Act of 1934. Defen-

dants Ernst & Young, Robertson International, Clews, Helen Smith, Fiona Smith, and Clive Smith move the court to dismiss all securities fraud claims advanced against them for lack of subject matter jurisdiction. The determination of whether this court has subject matter jurisdiction relative to the fraud claims advanced against the remaining defendants is appropriately initiated by the court *sua sponte*.[32]

■ The plaintiffs' invocation of jurisdiction under the Securities Exchange Act of 1934 is premised upon the following securities' transactions that took place in England:[33] 1) the September 1987 acquisition of Tzarina Limited by Butte Mining in exchange for 49.5 million shares of Butte Mining common stock (Complaint ¶¶ 50–51, 54–56 and 63); 2) the public offering of 10 million shares of Butte Mining common stock in October 1987 (Complaint ¶¶ 52–53 and 57–63); and 3) the April 1988 transfer to Butte Mining of North Butte Limited in exchange for 40 million shares of Butte Mining treasury stock (Complaint ¶¶ 64–74).[34]

26. Plaintiffs contend the loss of credibility in the marketplace made it difficult for Butte Mining to take advantage of viable business opportunities. (Complaint ¶ 73).

27. Plaintiffs allege the withheld properties were owned by Butte Mining "as a matter of equity" (Complaint ¶ 95), and the Control Group defendants committed a breach of trust and agency by failing to transfer the withheld properties to Butte Mining. (Complaint ¶ 96).

28. *See*, Complaint ¶ 75.

29. Plaintiffs contend the Control Group spent monies on worthless mining claims so as to give Butte Mining the appearance of a viable and successful mining company. (Complaint ¶ 75).

30. Plaintiffs allege that in 1988, Clive Smith and other members of the Control Group, by virtue of their controlling interest in Butte Mining, prevented Butte Mining's acquisition of a 49% interest in Montana Resources, a copper-molybdenum mine in Montana, an acquisition later completed by Asarco, Inc. (Complaint ¶¶ 78–79).

31. Plaintiffs also generally allege the Promoters and Controlled Entities may have made other unspecified fraudulent sales of Butte Mining stock to the public subsequent to October 1987. (Complaint ¶ 82).

32. A trial court may determine whether it has subject matter jurisdiction on its own motion, at

anytime. *Franklin v. State of Oregon, State Welfare Division*, 662 F.2d 1337, 1342 (9th Cir. 1981).

33. Because the Securities Exchange Act is silent as to its extraterritorial application, this court must ascertain whether the international transactions at issue are ones Congress would view as warranting the expenditure of American judicial resources. *Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1044–45 (2nd Cir.1983). In the absence of any guidance from legislative history, courts have looked to general principles of international law, the language of the securities statutes, and the remedial purpose of the statutes. *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409, 416 (8th Cir.1979).

34. Plaintiffs also attempt to invoke subject matter jurisdiction under the Securities Exchange Act by alleging: 1) that the Promoters and the Controlled Entities sold Butte Mining stock to the public (Complaint ¶ 54); and 2) that Clive Smith and other members of the Control Group, by virtue of their controlling interest in Butte Mining, precluded Butte Mining from purchasing the securities of Montana Resources, Inc. (Complaint ¶¶ 78–79). Neither allegation supports the invocation of subject matter jurisdiction.

The sale of Butte Mining stock by the Promoters and Controlled Entities to the public cannot act as a basis for subject matter jurisdiction, because the plaintiffs do not have standing to challenge

Federal courts have developed the following two tests for determining when federal securities laws apply extraterritorially: (i) the "conduct test," which looks to whether significant conduct in furtherance of the fraudulent scheme occurred in the United States, and (ii) the "effects test," which looks to whether conduct outside the United States results in deleterious effects here. Jurisdiction may be based under either test. *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.,* 592 F.2d 409 (8th Cir.1979). Plaintiffs' attempt to apply the Securities Exchange Act to the securities transactions underlying the Complaint fails under both tests.

### Effects Test

■ Under the "effects test", a federal court may sustain subject matter jurisdiction over fraudulent securities transactions that occurred in foreign countries if the foreign activity is determined to have caused a substantial adverse effect upon either domestic investors or a domestic securities market. *MCG, Inc. v. Great Western Energy Corp.,* 896 F.2d 170, 173–74 (5th Cir.1990). The doctrinal basis for this test derives from the RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 18 (1965).[35]

The first court to formulate and apply the effects test was the Second Circuit in *Schoenbaum v. Firstbrook,* 405 F.2d 200 (2nd Cir.1968), *reh'g on other grounds,* 405 F.2d 215 (*en banc*), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). In *Schoenbaum,* an American shareholder in a Canadian corporation brought a derivative suit alleging fraud in violation of the 1934 Securities Exchange Act. The challenged transaction occurred in Canada and involved Canadian stock registered on the American Stock Exchange. The court held the securities laws of the United States could be applied extraterritorially under the facts of that case, "in order to protect domestic investors who have purchased foreign securities on American exchanges and to protect the domestic securities market from the effects of

these transactions. A Rule 10b–5 claim can only be instituted by a purchaser or seller of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 751, 95 S.Ct. 1917, 1932–33, 44 L.Ed.2d 539 (1975).

The allegations of impropriety by the Control Group, in connection with the aborted purchase of the Montana Resources stock, cannot sustain subject matter jurisdiction because the allegations fail to state a claim under Rule 10b–5. Rule 10b–5 prohibits acts of fraud or deception in connection with the purchase or sale of securities. It does not, however, protect against damages incurred as a result of mere corporate mismanagement or breach of a fiduciary duty by persons in control of the corporation. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 472–479, 97 S.Ct. 1292, 1300–04, 51 L.Ed.2d 480 (1977); *Gaines v. Haughton,* 645 F.2d 761, 779 n. 33 (9th Cir.1981). Controversies in those areas have traditionally been the subject of litigation in state courts. *Gaines,* 645 F.2d at 779 n. 33.

The Complaint, in the instant case, does not allege that Butte Mining was defrauded or deceived by omissions or misrepresentations in connection with the aborted purchase of the Montana Resources stock. Rather, it is merely alleged that Smith used his control over Butte Mining to block the financing of the stock purchase in order to further his own financial interests (Complaint ¶ 78); that Washington committed a breach of contract when he refused to offer Butte Mining a right of first refusal before selling the stock to Asarco (Complaint ¶ 79); and that

the Control Group used their control of Butte Mining to cause the corporation to forego its right of first refusal relative to the sale of the Montana Resources stock (Complaint ¶ 79). Although this alleged conduct by the defendants, if true, may give rise to claims for breach of fiduciary duty or breach of contract under state law, such conduct cannot be fairly viewed as deceptive, and accordingly is beyond the purview of Rule 10b–5.

35. Section 18 of the RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES provides as follows:

**Jurisdiction to Prescribe With Respect to Effect Within Territory.**

A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if either:

(a) the conduct and its effect are generally recognized as constituent elements of a crime or tort under the law of states that have reasonably developed legal systems, or

(b)(i) the conduct and its effect are constituent elements of activity to which the rule applies; (ii) the effect within the territory is substantial; (iii) it occurs as a direct and foreseeable result of the conduct outside the territory; and (iv) the rule is not inconsistent with the principles of justice generally recognized by states that have reasonably developed legal systems.

improper foreign transactions in American securities." *Schoenbaum*, 405 F.2d at 206.

The observations offered by the Ninth Circuit Court of Appeals in the two cases discussing the application of the "effects test" to extraterritorial securities transactions, indicate the effects test adopted by the Ninth Circuit parallels the test adopted by the Second Circuit. *Des Brisay v. Goldfield Corp.*, 549 F.2d 133 (9th Cir.1977); *Securities and Exchange Commission v. United Financial Group, Inc.*, 474 F.2d 354 (9th Cir.1973).

In *Des Brisay*, a corporation, whose stock was registered on the American Stock Exchange, was injured when a fraudulent securities transaction in Canada caused the collapse of the market for its stock. "Effect-based" jurisdiction was sustained because the Canadian stock transaction caused an adverse impact on a domestic securities exchange. *Id.*, 549 F.2d at 135. *SEC* involved an action for injunctive relief by the Securities Exchange Commission against a group of foreign investment companies. Effect-based jurisdiction was sustained because the foreign investment companies engaged in fraudulent activities within the United States, which caused a substantial adverse impact on the companies' American investors. *Id.*, 474 F.2d at 356–57.

In this case, plaintiffs assert jurisdiction vests in this court under the "effects test" for two distinct reasons: First, plaintiffs contend a number of United States' residents acquired Butte Mining stock in connection with the United Kingdom public offering.[36] Second, the foreign securities transactions at issue allegedly disabled Butte Mining from developing its Montana mining properties.

■ Plaintiffs' latter argument, which predicates jurisdiction upon Butte Mining's inability to develop the Montana mining properties, can be summarily rejected because the "effects test" does not encompass adverse effects upon a foreign corporation's business aspirations in the United States, or a general adverse effect upon the American economy. As stated in *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2nd Cir.1975), effect-based jurisdiction exists only when the foreign fraud results in injury to "purchasers or sellers of securities in whom the United States has an interest, not where acts simply have an adverse effect on the American economy or American investors generally." *Id.*, at 989.[37]

■ Although plaintiffs' former argument presents a closer question, it also falls short of the mark. In order for effect-based jurisdiction to exist based upon the presence of American shareholders in a foreign corporation, a *prima facia* showing must be made that the stock was acquired through offers directed to purchasers in the United States. *Bersch, supra*, 519 F.2d at 992–93. In *Bersch*, purchasers of common stock of a Bahamian corporation brought a class action for damages allegedly caused by fraudulent financial statements included in prospectuses utilized in three foreign offerings. The plaintiff-purchasers consisted of Americans resident in the United States, Americans resident abroad, and foreigners. The court held effect-based jurisdiction applied to Americans who were tendered stock offers in this country, but not to Americans residing in foreign countries. The non-resident Americans were protected by the securities laws of the United States, the court reasoned, only if the defendants engaged in significant conduct in the United States that directly caused the injuries of which the non-resident Americans complained (*i.e.*, upon a showing of "conduct-based" jurisdiction). *Id.*, at 992–93.[38]

---

36. *See,* David Lloyd–Jacob Certification, ¶ 140. Lloyd–Jacob is the Chairman of the Board and Chief Executive Officer of Butte Mining, and Chairman of the Board of Tzarina, Central Butte and North Butte.

37. *See, also, Koal Industries Corp. v. Asland, S.A.*, 808 F.Supp. 1143 (S.D.N.Y.1992) (effect-based jurisdiction held to exist only when detrimental effects from the foreign securities fraud relate to "purchasers and sellers in the United States and involve the same securities that are the subject of the alleged fraud.") *Id.*, at 1155; and *Recaman v. Barish*, 408 F.Supp. 1189, 1199 n. 11 (E.D.Pa. 1975) (study showing general adverse impact on United States economy in case where securities were not traded on domestic exchanges held to be insufficient under effects test.)

38. The record in *Bersch* did not clearly identify how the American residents learned of the offerings and acquired their shares. The court simply

This restriction on effect-based jurisdiction was reaffirmed by the Second Circuit in *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2nd Cir.1989). In *Minorco*, a Luxembourg corporation attempted a hostile take-over of a British corporation, which had a number of United States shareholders. In an apparent attempt to reach the United States shareholders, without subjecting itself to the securities laws of the United States, Minorco mailed the offering documents, to British nominees for the American shareholders, instead of directly to the United States shareholders.[39] When the offering was made, Minorco knew the nominees were required by law to forward the offering documents to the United States shareholders. Based upon these facts, the court held that effect-based jurisdiction was appropriate because the mailing of the offering documents to the British nominees, knowing that they would be forwarded into the United States, constituted an "effect" upon United States residents that was a "direct and foreseeable result" of "conduct outside ... the United States." *Minorco*, 871 F.2d at 262.

In the present case, plaintiffs invoke effect-based jurisdiction predicated solely upon the following assertion by Lloyd–Jacob that Butte Mining had United States shareholders, and that some of those United States shareholders acquired their stock in connection with the public offering:

> Butte has a number of United States Shareholders. From a review of our shareholder records, which I caused to be done, and from additional investigation, which I also caused to [be] done, Butte has been able to identify that the following persons held shares in Butte: Dennis Washington (2,000,000 shares), Milton Datsopoulos (250,000 shares), Bill Murray (undetermined number of shares), Rosemary Young (100 shares) [all are citizens of Montana], Ian Maycock (5,000 share[s]) [Texas]; George Smith (500 shares) [California]; Geoffrey P. Leslie (42 shares) [North Carolina]; and Martin Price (660 shares) [New York]. A number of these shareholders acquired their shares in connection with the original public offering by Butte Mining Plc. I also believe that there are a fair number of additional United States shareholders, which we have not yet been able to identify (the reason appearing to be that they hold their shares as of record through off-shore corporations). I also believe that these persons may have acquired their shares during the initial public offering by Butte Mining Plc.

*See,* Lloyd–Jacob Certification, ¶ 140.

Plaintiffs' attempt to invoke effect-based jurisdiction premised upon this statement by Lloyd–Jacob is deficient. Noticeably absent from the Certification is any assertion that offering documents, issued in connection with the public offering, were directed into the United States—a crucial requirement for the invocation of effect-based jurisdiction. *Bersch, supra,* 519 F.2d at 992–93. In view of the restriction in the offering documents precluding the sale of Butte Mining stock in the United States, the court, without evidence to the contrary, must assume the United States shareholders acquired their Butte Mining stock in England. Accordingly, the court is compelled to conclude that effect-based jurisdiction does not exist.

### Conduct Test

 The conduct test premises jurisdiction upon conduct occurring within the United States. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 547 F.Supp. 309, 313 (N.D.Ill. 1982). The residence or citizenship of the parties and the foreign or domestic nature of the securities involved, while relevant, is not the focus of inquiry; instead a court concentrates upon the relative importance of activities within the United States to the success

---

assumed the allegedly misleading financial statements were sent into the United States, because the prospectus drafted in connection with at least one offering, did not exclude purchases by United States' residents. *Id.,* at 992–993. Based upon this assumption, the court asserted jurisdiction.

**39.** Although the offering documents expressly stated that an offer was not being made directly or indirectly in the United States, the documents stated that Minorco would accept tenders from the United States' residents as long as the acceptance form was sent to Minorco from outside the United States. *Minorco,* 871 F.2d at 256, 262.

of the alleged scheme to defraud. *Id.*, at 313–14. If the conduct is substantial rather than merely preparatory, incidental or fortuitous, the courts are more likely to find jurisdiction. *Id.*, at 314. The conduct test derives from RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 17 (1965),[40] and as a policy matter seeks to prevent the United States from being "used as a base for manufacturing fraudulent security devices for export, even when they are peddled only to foreigners." *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1017 (2nd Cir.1975).[41]

The conduct test was first applied in *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2nd Cir.1972). In *Leasco*, American plaintiffs alleged fraud in the sale of securities of an English corporation that were not registered or traded on the American exchanges, nor sold within the United States. The court, however, upheld jurisdiction because substantial misrepresentations were made within this country to the plaintiff-purchasers. *Id.*, 468 F.2d at 1336–39. Since *Leasco*, courts have endeavored to define the limits of the "conduct test".

In *Grunenthal GmbH v. Hotz*, 712 F.2d 421 (9th Cir.1983), the Ninth Circuit Court of Appeals adopted the standard described by the Eighth Circuit in *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409 (8th Cir.1979). The Eighth Circuit standard provides that a court has subject matter jurisdiction over fraud claims arising out of foreign securities transactions if the defendants' conduct [that involved the use of instrumentalities of interstate commerce] in the United States was significant with respect to the alleged violations and furthered the fraudulent scheme. *Grunenthal*, 712 F.2d at 424. Under this standard, it is not necessary that the United States conduct be fraudulent itself, however, the domestic conduct must be material—*i.e.*, directly causing the losses sustained by the plaintiff, and not merely preparatory. *Grunenthal*, 712 F.2d at 424; *citing, Continental Grain*, 592 F.2d at 420.[42]

■ Consistent with the foregoing test, the court, in the present case, must examine the relationship between the defendants' conduct in the United States and the alleged fraudulent scheme, and determine whether the defendants' conduct in the United States directly caused the losses allegedly sustained by the plaintiffs. Plaintiffs maintain that conduct-based jurisdiction is appropriate for the following reasons: 1) the Promoters organized and incorporated MMP in the United States (Complaint ¶ 44); 2) MMP and the Promoters purchased the subject mining properties (which were later sold to Butte Mining), in Montana. (Complaint ¶¶ 44–45); 3) title to the mining properties was initially vested in twelve Montana shell corporations (Complaint ¶¶ 33 & 46); and 4) field work was performed by Robertson and Mineral in

---

**40.** Section 17 of the RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES provides as follows:

**Jurisdiction to Prescribe with Respect to Conduct, Thing, Status or Other Interest within Territory.**

A state has jurisdiction to prescribe a rule of law:

(a) attaching legal consequences to conduct that occurs within its territory, whether or not such consequences are determined by the effects of the conduct outside the territory; and

(b) relating to a thing located, or a status or other interest localized in its territory.

**41.** In gauging whether to accord the anti-fraud provisions extraterritorial application under the "conduct test," courts have also focused upon two additional policy considerations.

The first involves international reciprocity, with courts giving to innocent foreign investors lured into allegedly fraudulent schemes by acts occurring in this country, at least in part, the benefit of our securities laws, with the expectation that their government would reciprocate. *Securities and Exchange Commission v. Kasser*, 548 F.2d 109, 116 (3rd Cir.1977); *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409, 421–22.

The second emphasizes that exercising jurisdiction may support Congress' intent, as expressed in the anti-fraud provisions of the securities laws, to "elevate the standard of conduct in securities transactions." *Continental Grain*, 592 F.2d at 421.

**42.** The standard adopted by the Second and D.C. Circuits differs from the standard employed in the Ninth Circuit in that the domestic conduct needed to trigger subject matter jurisdiction in the former circuits must be fraudulent itself; thus, satisfying the elements of a Rule 10b–5 violation. *Continental Grain*, 592 F.2d at 418.

Montana in order to prepare their opinions, which were later included in the Listing Particulars issued in England in connection with the public offering and North Butte Registration. (Complaint ¶¶ 60, 61 and 70). Plaintiffs contend that "but for" these domestic activities the fraudulent scheme could not have proceeded, and the injuries to the plaintiffs could not have occurred.

The "but for" test proposed by plaintiffs, however, is not the appropriate measuring stick for a conduct-based jurisdiction determination. Rather, the court must determine whether the conduct that allegedly occurred in the United States was a direct cause of plaintiffs' injuries. Assuming *arguendo* all of the described activity occurred in the United States, it cannot be said that plaintiffs suffered injury ·as a direct result of defendants' acquisition of the Montana properties, the formation of the Montana shell corporations, the vesting of title to the mining properties in the Montana corporations, or the field work conducted by Mineral and Robertson.[43] Rather, the alleged fraud occurred when the final Listing Particulars (which contained the alleged misrepresentations and omissions) were placed in Butte Mining's hands in England. *See, e.g., Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 987 (2nd Cir.1975).[44] Any losses sustained by Butte Mining accrued when the securities transactions were consummated in England. All of the relevant conduct alleged to have occurred in the United States was merely preparatory to the securities transactions that occurred in England.[45]

The cases cited by plaintiffs in which conduct-based jurisdiction was invoked are inapposite to the case *sub judice,* because each underscores United States conduct that directly causes injuries to the plaintiff. In *Grunenthal GmbH v. Hotz,* 712 F.2d 421 (9th Cir.1983), material misrepresentations were made at a meeting in the United States which induced plaintiffs to execute a sales agreement. The misrepresentations were held to be "material" because immediately after they were made, plaintiffs executed the sales agreement. *Id.* 712 F.2d at 425.[46] In *Alfadda v. Fenn,* 935 F.2d 475 (2nd Cir. 1991), sales of securities, in violation of the prospectus, occurred in the United States which resulted "in the consummation of the securities fraud." *Id.,* 935 F.2d at 478. In *AVC Nederland B.V. v. Atrium Investment Partnership,* 740 F.2d 148 (2nd Cir.1984), misrepresentations were made and negotiations were conducted in the United States. *Id.,* 740 F.2d at 154. In *ITT v. Cornfeld,* 619 F.2d 909 (2nd Cir.1980), most of the work on the prospectus was conducted in the United

---

**43.** There is no allegation that the Robertson–Mineral opinions were issued in the United States, or communicated to plaintiffs from the United States. Rather it is alleged that the opinions were merely included in the Listing Particulars issued in England.

**44.** In *Bersch,* like in the present case, the offered shares were described in foreign-produced prospectuses directed only to non-Americans, were not listed on any American exchange, and, accordingly, were not registered under the United States securities laws. *Bersch,* 519 F.2d at 980–81. The activities within the United States included meetings between the issuing corporation and American underwriters to plan the foreign offering, meetings with the SEC, drafting of parts of the prospectus, and the opening of accounts in the Bank of New York for proceeds from the underwriting, all of which were declared as merely preparatory to the offering. *Id.,* at 985–987.

The final prospectuses, which contained the alleged misrepresentations, the court emphasized, emanated from London, Brussels, Toronto, the Bahamas, and Geneva. *Id.,* at 987.

**45.** The court is cognizant of plaintiffs' assertion that Clive Smith and other members of the Control Group engaged in conduct in the United States in connection with the sale of Montana Resources, Inc. to ASARCO. However, such conduct is unrelated to the foreign securities transactions upon which the securities fraud claims are grounded.

**46.** The *Grunenthal* court specifically stated:

> Hotz' conduct in this country was not 'merely preparatory'; rather, the conduct was 'material' because immediately thereafter defendants signed and plaintiff was induced to execute the agreement. . . . Moreover, the execution of the agreement in Los Angeles itself constituted an act that strongly supports our assertion of jurisdiction . . . [T]he misrepresentation arising from Hotz' presence for the first time, and the actual signing of the agreement were significant, material and in furtherance of the fraudulent scheme.

> *Id.,* 712 F.2d at 425.

States and the prospectus was drafted in this country.[47] In *Securities and Exchange Commission v. Kasser*, 548 F.2d 109 (3rd Cir. 1977), negotiations and execution of an investment contract occurred in the United States which directly caused plaintiff's losses. In *ITT v. Vencap*, 519 F.2d 1001 (2nd Cir. 1975), a purchase agreement was drafted in the United States and misrepresentations occurred here. *Id.*, 519 F.2d at 1016–1018. Finally, in *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409 (8th Cir.1979), defendants solicited the sale of Australian securities from within the United States which constituted the "completion of the fraud." *Id.*, 592 F.2d at 420.

All of the activity material to plaintiffs' alleged losses in the present case occurred outside the United States. Consequently, the court finds the plaintiffs have failed to make a *prima facia* showing of jurisdictional facts sufficient for the maintenance of an action under the Securities Exchange Act of 1934.[48]

### Motions To Dismiss RICO Claims For Lack of Subject Matter Jurisdiction

 Plaintiffs also invoke this court's subject matter jurisdiction under RICO, based upon the alleged predicate acts of securities fraud discussed above, as well as alleged acts of wire fraud and mail fraud.[49] Because the previously dismissed claims of securities fraud cannot be utilized as predicate acts for purposes of a RICO claim, *see, Brannan v. Eisenstein*, 804 F.2d 1041, 1046 (8th Cir.1986); *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1453 (S.D.N.Y.1986), the invocation of subject matter jurisdiction is dependent upon whether cognizable acts of mail fraud and wire fraud are alleged which are sufficient to sustain a RICO claim. The court concludes that the requisite allegations of wire fraud and mail fraud have not been pled.

 In order to plead a justiciable claim for mail fraud, it must be alleged that the United States mail was used to either: 1) obtain money or property by means of a false or fraudulent representation or promise; or 2) further a scheme or artifice to defraud. 18 U.S.C. § 1341. Under the latter provision, there is no requirement that the victim of the fraud be deceived by the document satisfying the statute's mailing requirement; rather, the requirement is merely that the mailing be in furtherance of the fraudulent scheme. *United States v. Paccione*, 949 F.2d 1183, 1196 (2nd Cir.1991). Similarly, the wire fraud statute, 18 U.S.C. § 1343, requires a showing that communications were made by wire, radio or television, in interstate or foreign commerce, to either: 1) obtain money or property by means of a false or fraudulent representation or promise; or 2) further a scheme or artifice to defraud.

---

47. Unlike *AVC Nederland*, there is no allegation, in the instant case, that the Listing Particulars were drafted in, or issued from, the United States.

48. Plaintiffs also suggest that subject matter jurisdiction may be invoked under the Securities Exchange Act because Butte Mining was a business based upon American assets and operations. The court summarily rejects this argument because plaintiffs fail to cite any authority for the proposition that ownership of assets in the United States is sufficient to confer subject matter jurisdiction, when no acts material to the alleged securities fraud took place in the United States.

49. RICO provides a civil remedy to any person "injured in his business or property" by another person's participation in an enterprise through a "pattern of racketeering activity." 18 U.S.C. §§ 1962, 1964(c). In order to plead a RICO claim, the plaintiff must allege with particularity:

1) that the defendant; 2) through the commission of two or more predicate acts; 3) constituting a pattern; 4) of racketeering activity; 5) directly or indirectly invested in, or maintained an interest in or participated in; 6) an enterprise; 7) the activities of which affected interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2nd Cir.1983).

"Racketeering activity" includes, *inter alia*, acts indictable under 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 1343 (wire fraud). 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires the commission of at least two such predicate acts within a ten-year period. 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 236–37, 109 S.Ct. 2893, 2899–2900, 106 L.Ed.2d 195 (1989). In addition, a pattern requires that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.*, 492 U.S. at 238–39, 109 S.Ct. at 2900.

In the present case there is no allegation that the defendants communicated misrepresentations to plaintiffs via domestic mail or telephone services to fraudulently obtain money or property from the plaintiffs. Rather, plaintiffs allege the defendants merely used the United States mail and wire systems to further a securities fraud scheme.[50] The fraudulent scheme upon which plaintiffs rely for their wire and mail fraud claims, however, is the same scheme upon which they predicated their securities fraud claims. Because the court previously dismissed the securities fraud claims, the same conduct by defendants cannot constitute a fraudulent scheme giving rise to claims of wire fraud and mail fraud. *Brannan v. Eisenstein,* 804 F.2d 1041, 1046 (8th Cir.1986). Accordingly, the court is compelled to conclude that viable RICO claims do not exist.

 Defendants' use of the United States' communications systems, in this case, relates merely to activities properly viewed as preparatory to an alleged securities fraud perpetrated in England.[51] It is the opinion of this court that Congress did not intend the limited judicial resources of the United States to be expended on litigating RICO claims, where the use of domestic communications systems is so tenuous.[52] If the court were to hold otherwise, jurisdiction could be sustained over a foreign plaintiff's RICO claim solely because the RICO defendants made two telephone calls within the United States, or used the United States mails on two occasions. Given the vast number of foreign business transactions in which the United States mail, wire and telephone systems are used merely by chance, United States courts could become flooded with numerous foreign based RICO claims bearing little or no nexus to this country. In summary, the court holds that when the predicate acts upon which a RICO claim is bottomed, consist merely of the use of United States communications systems in furtherance of domestic activities which are preparatory to a foreign securities fraud, and the court lacks subject matter jurisdiction over the underlying securities fraud claims, the court also lacks subject matter jurisdiction over the RICO claims which are primarily predicated upon the securities fraud. Conduct more substantial than that alleged here must take place in the United States for jurisdiction to be sustained.

### Pendent State Claims

 In the absence of subject matter jurisdiction over the federal claims, the court is compelled to refrain from exercising supplemental jurisdiction over the remaining state law claims as well. 28 U.S.C. § 1367(c)(3); *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 692 (9th Cir.1993).

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the defendants' motions to dismiss for lack of subject matter jurisdiction are GRANTED, and this action is DISMISSED in its entirety. The anti-suit injunction issued by this court on October 2, 1992, is dissolved. Having dismissed this action, all other pending motions become moot.

---

**50.** *See,* Complaint ¶ 211(b–c).

**51.** As discussed previously, all of the conduct material to the alleged securities fraud occurred in England, and the effects of the alleged fraud were felt in England.

**52.** The RICO statute is silent as to its extraterritorial application. Consequently, the court must determine whether Congress wished the precious resources of the United States courts to be devoted to a RICO claim predicated upon activities that are predominantly foreign, or leave the claim to a foreign tribunal. *Koal Industries Corp. v. Asland, S.A.,* 808 F.Supp. 1143, 1156 (S.D.N.Y.1992); *Jose v. M/V Fir Grove,* 801 F.Supp. 349, 355 (D.Or.1991).